Dwayne MORTENSON, Mike Shannon, Jack Hiltibran, Alan J. Filip, and Gilbert Lewis, Plaintiffs–Respondents,

v.

LEATHERWOOD CONSTRUCTION, INC., Defendant–Appellant.

Nos. 25514, 25515, 25516, 25517, 25518.

Missouri Court of Appeals, Southern District, Division Two.

June 29, 2004.

Jacob Y. Garrett, West Plains, for Appellant.

R. David Ray, West Plains, for Respondents.

JEFFREY W. BATES, Judge.

Defendant–Appellant Leatherwood Construction, Inc. ("Leatherwood") appeals from a judgment, entered after a consolidated bench trial, in which Leatherwood was ordered to pay double damages and attorney fees to Plaintiffs–Respondents Dwayne Mortenson, Mike Shannon, Jack Hiltibran, Alan Filip and Gilbert Lewis (hereinafter collectively referred to as "Workers") for violating Missouri's Prevailing Wage Act ("PWA"), §§ 290.210–290.340.[1] Leatherwood contends the trial court erred in determining that Leatherwood violated the PWA by not paying Workers the prevailing wage for an ironworker during all three phases of a project to construct an addition to the public school in Norwood, Missouri. We affirm.

## I. Standard of Review

As the judgment in favor of Workers was entered after a trial by the court, appellate review is conducted pursuant to Rule 84.13(d).[2] Therefore, we must affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[3] All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded. *Ridgway v. TTnT Development Corp.*, 126 S.W.3d 807, 812 (Mo.App.2004). Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses. *Savannah Place, Ltd. v. Heidel-*

*berg*, 122 S.W.3d 74, 86 (Mo.App.2003). We defer to the trial judge's superior opportunity to assess the witnesses' credibility. *Harris v. Lynch*, 940 S.W.2d 42, 45 (Mo.App.1997). No such deference is afforded the trial court, however, when we review its conclusions of law. We independently evaluate whether the trial court properly declared or applied the law to the facts presented. *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 899 (Mo. App.2003); *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 777 (Mo.App.2002).

## II. Facts and Procedural History

In the Spring of 1999, the Norwood School District ("the District") began accepting bids on a project to construct a three-story addition to the school. The District acted as its own general contractor on the project. The architectural plans for the addition specified that the building would have a structural steel skeleton, metal roof decking, masonry block walls set on a concrete foundation, and insulated metal siding installed over the masonry block.

In April 1999, Leatherwood submitted subcontractor bids for the structural steel, metal roofing and metal siding portions of the construction. In one bid, Leatherwood proposed to supply "all structural steel, bar joist, decking, purlins, stairs, handrails, bolts, no bulb tee, misc. steel, and standing seam roof with 4″ vinyl insulation" and all labor necessary to install it for $272,000. In a separate bid document, Leatherwood also proposed to affix additional foam insulation to the block walls, install a hat channel system to hold the metal siding, and hang the metal siding on

---

1. All references to statutes are to RSMo (2000).

2. All references to rules are to the Missouri Rules of Civil Procedure (2004).

3. *Murphy* interpreted the provisions of former Rule 73.01(c), which now appear in essentially the same form in Rule 84.13(d).

the walls for $15,394. By installing insulation over the masonry blocks and then covering the insulation with metal siding, the energy efficiency of the building would be increased. Supporting documents submitted with Leatherwood's bids described the work as the construction of a "steel building." After Leatherwood reduced its bid for the structural steel and metal roof decking portions of the project to approximately $269,000, these two bids were accepted by the District.

Since this was a public works project, the PWA applied to the construction. Therefore, Leatherwood was required to comply with Annual Wage Order No. 5 issued by the Missouri Department of Labor Standards ("MDLS"). Section 118 of this order set prevailing wages for work performed by various occupational titles on public works projects within Wright County.

The "red iron" structural steel skeleton of the building and metal roof decking were supplied to Leatherwood by L & R Industries ("L & R"). The structural steel and metal roof components were delivered in packages to the job site by L & R on its trucks. The packages included the component metal parts, all hardware (i.e., nuts, bolts, screws, etc.) necessary to assemble the components, and instructions on how to put the parts together. Each metal part in the packages had its own unique identification number. Using the instructions, Workers unloaded the parts and stacked them in the yard by identification number so they could be retrieved sequentially to expedite construction. Each metal part was precut and predrilled so it could be easily assembled by bolting and/or welding with only minor adjustments required. Workers used the instructions and hardware to assemble these metal components without having to cut or alter the parts.

The metal siding used by Leatherwood on the project was supplied by Carr Ward Metal ("Carr"). The material was delivered to the job site by truck from Carr's business in West Plains, Missouri. The metal siding was precut in incremental lengths because it was designed to go on a building with a pitched roof. There were two pieces of siding of each length to progress up the roof's pitch. These pieces were unloaded and divided into two piles so Workers could install one-half of the building's siding at a time. The siding came with instructions and the necessary bolts to assemble it.

Workers first assembled the red iron skeleton of the building using the components, hardware and instructions supplied by L & R. After this phase of the project was completed, another contractor poured the concrete foundation and constructed the masonry block walls. The building's doors and windows were framed and installed by employees of the masonry block contractor. Once the walls were finished, Workers installed the metal roof using the component parts, hardware and instructions supplied by L & R. Finally, Workers installed the insulation, hat channel and metal siding on the building.

The dispute in this case arose because of a disagreement between Leatherwood and Workers concerning their rate of pay during the three phases of construction. When Workers assembled the red iron skeleton and metal roof decking of the building, Leatherwood paid them the prevailing wage for an ironworker. When Workers installed the metal siding on the building, however, Leatherwood paid them the prevailing wage for a sheet metal worker. Leatherwood made this decision unilaterally without contacting MDLS to confirm that this classification of the work

was correct. *See* 8 C.S.R. 30–3.060(5).[4] Workers protested the new classification because the prevailing wage for a sheet metal worker was $18 per hour less than the prevailing wage for an ironworker. Because Leatherwood refused to pay Workers an ironworker's prevailing wage for all three phases of the construction, they sued for double damages and attorney fees as permitted by the PWA. *See* § 290.300.

At trial, the parties stipulated that construction of the school addition was a public works project to which the PWA applied, and Workers were directly employed by Leatherwood in performing actual on-site construction work. *See* § 290.230.1. Leatherwood also agreed on the amount each worker would be entitled to receive as double damages assuming the workers should have been paid an ironworker's prevailing wage during all phases of the construction. The only disputed issue was whether the installation of metal siding on the building fell within the occupational title of an ironworker. The descriptions of work that fall within this occupational title are found in 8 C.S.R. 30–3.060(8)(J), which we will refer to generically as "the ironworker regulation." The parties focused on subdivision 7 of the ironworker regulation. It states, in pertinent part:

> (J) Ironworker—Applies to workers who perform work in connection with field fabrication, erection, or both, installation, removal, wrecking and dismantling of structural, architectural and re-

inforcing iron and steel, ornamental lead, bronze, brass, copper and aluminum, and plastics or other materials when used in place of them. The work falling within the occupational title of work description includes:

> . . . .

> 7. Metal buildings. The erection and installation of structural steel and sheet metal packaged buildings when they come in a package unit, such as Butler, Delta, Varco Prudent or other name brand packaged buildings. The installation of all doors, windows and insulation (when installed in conjunction with sheeting) in the packaged buildings. *The installation of metal siding and metal roof decking, regardless of the fastening method or the object to which it is fastened* [.]

(Emphasis added.) Workers contended that the last sentence of subdivision 7 entitled them to be paid an ironworker's prevailing wage for installing metal siding on the school addition. Workers argued the way in which construction materials were packaged, delivered and assembled constituted "[t]he erection and installation of structural steel and sheet metal packaged buildings when they come in a package unit" as described in subdivision 7. Leatherwood took the opposite position.

In accordance with Rule 73.01(c), Leatherwood asked the trial court to make a finding of fact on this dispositive issue.[5] In a written motion filed the day before trial, Leatherwood asked the trial court to

---

4. This section of the regulation states: "Any question as to the proper classification of work should be resolved before the work in question is commenced. Interested parties are encouraged to contact the Prevailing Wage Section of the Division of Labor Standards for an interpretation of these rules and for a determination of the appropriate occupational title of work description, relative to the class or type of work to be performed."

5. This subdivision of the rule states, in pertinent part: "The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow."

"make a determination of fact as [to] whether pursuant to Chapter 290 RSMo. whether [sic] such work being completed by the Plaintiff constituted the erection and installation of a structural steel and sheet metal package building as defined in said Chapter." During the trial, each party treated the issue as one of fact and presented expert testimony addressing whether the school construction fell within the scope of subdivision 7 of the ironworker regulation.

Arwood Garrett, Jr. ("Garrett"), and Ken Owens ("Owens") testified as Workers' experts. Brief resumes of their testimony are set out below.

Garrett was an investigator for the MDLS, and his job primarily involved investigating complaints concerning alleged violations of the PWA. He had become involved in Workers' case after they filed a complaint with MDLS alleging that they were improperly classified and, therefore, underpaid by Leatherwood. It was Garrett's job to determine what tasks Workers had been performing and whether they had been properly classified for payment purposes pursuant to the PWA. In making that determination, Garrett relied upon a number of factors: (1) his factual investigation of what tasks Workers had been doing; (2) comparing these tasks with the work descriptions contained in the various occupational titles listed in 8 C.S.R. 30–3.060; (3) consideration of how such tasks would be classified by trade representatives and labor union representatives in any applicable collective bargaining agreements; and (4) how such tasks are classified by custom and usage in the industry.

Based on Garrett's investigation, he opined that the school addition was a sheet metal packaged building as defined in the ironworker regulation. Therefore, Workers should have been paid as ironworkers when they installed metal siding on the building because this work fell within the occupational title of ironworker. Based on the custom and usage in the industry, Garrett testified that the school construction was a packaged building, even though: (1) the metal structure, roof and siding came in different packages; (2) not all packages came from the same supplier; and (3) Workers did not install the building's doors and windows. Moreover, Garrett testified that installing sheet metal siding on a building fell within the occupational title of an ironworker, regardless of whether it was performed in conjunction with the construction of a sheet metal packaged building.

Garrett also opined that Leatherwood should not have paid Workers at the lower prevailing wage for a sheet metal worker because installing metal siding does not fall within the occupational title of a sheet metal worker as described in 8 C.S.R. 30–3.060(8)(V). According to this regulation, sheet metal workers primarily do heating, air conditioning and duct work.

Owens was the business agent for Ironworkers' Local 10 in Springfield, Missouri. As part of his work, he had helped settle jurisdictional disputes with other crafts by helping classify work into occupational titles. He also had been consulted by MDLS for the same purpose. He had considerable personal experience and familiarity with the erection of packaged metal buildings, as well as the regional custom and practice in Southwest Missouri concerning such construction. Owens opined that the Norwood school addition was a sheet metal packaged building within the meaning of the ironworker regulation, and it would be considered such by custom and practice in the construction industry. Owens also agreed with Garrett that installing metal siding does not fall within the occupational title of a sheet metal worker in 8 C.S.R. 30–3.060(8)(V).

Sheet metal workers primarily work with heating, air conditioning, exhaust and ventilation systems and ductwork in buildings.

The Workers' expert testimony was challenged by Leatherwood during its case. Its president, Bill Leatherwood, testified that, based on his construction experience, the school addition did not constitute a sheet metal packaged building within the meaning of the ironworker regulation because it did not come from one supplier with everything needed to construct it at one time (e.g., complete plans, hardware, doors, windows, etc.). Leatherwood also called Joe Atwater, the job supervisor of the school addition project. Atwater was familiar with pre-engineered metal buildings from his construction experience. He opined that such buildings consist of a complete system composed of structural steel, sheet metal roof and siding, trim, gutters, doors and windows, with instructions on how to assemble all of it. Therefore, he testified the school addition project was not a sheet metal packaged building within the meaning of the ironworker regulation.

The trial court's judgment included findings of fact and conclusions of law. In the court's factual findings, it summarized the testimony presented by Garrett and Owens and then made the following factual determination:

> Defendant has requested that the Court make specific findings as to "whether pursuant to Chapter 290 RSMo.... such work being completed by the Plaintiff constituted the erection and installation of a structural steel and sheet metal package building as defined in said Chapter," and whether the construction at issue is of such description as to come within regulation 8 CSR 30–030(8)(J).7. Broadly interpreting the applicable regulations and statutes, this Court finds the Norwood School addition is a struc-

tural steel and sheet metal package building.

The trial court entered judgment for Workers for double damages and attorney fees, and this appeal followed.

## III. Discussion and Decision

This case is governed by the PWA, which was enacted by the legislature in 1957. *City of Kennett v. Labor and Indus. Relations Commission*, 610 S.W.2d 623, 625 (Mo. banc 1981). The express public policy served by the PWA is to assure "that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work." RSMo § 290.220.

The Department of Labor and Industrial Relations is charged with enforcement of the PWA and has been authorized by the legislature to "establish rules and regulations for the purpose of carrying out the provisions of sections 290.210 to 290.340 [the PWA]." RSMo § 290.240. The ironworker regulation was prepared pursuant to this statutory authority. In the process of selecting the various occupational titles included in 8 C.S.R. 30–3.060(8)(A–Z) and preparing the various scope of work descriptions utilized within each such title, the Department is required to engage in a very fact-intensive and fact-specific analysis:

> Each occupational title of work description shall be based upon the particular nature of the work performed, with consideration given to those trades, occupations or work generally considered within the construction industry as constituting a distinct classification of work. In determining occupational titles and scope of work definitions, the department shall consider the following:

(A) Collective bargaining agreements;

(B) *Dictionary of Occupational Titles,* as published by the United States Department of Labor; and

(C) Opinions of experts from organized labor and the opinions of contractors and contractor associations as they relate to the custom and usage applicable to the construction industry in Missouri.

8 C.S.R. 30–3.060(2).

Because of the remedial nature of this act, we must interpret it broadly so as to accomplish the greatest public good. *Long v. Interstate Ready–Mix, L.L.C.,* 83 S.W.3d 571, 574 (Mo.App.2002). We bear that in mind as we endeavor to interpret and apply the PWA and its implementing regulations to the facts of this case.

■ Leatherwood's appeal presents a single issue for us to decide. Leatherwood contends the trial court erred in awarding Workers prevailing wages for an ironworker for installing sheet metal siding on the school addition because, as a matter of law, this building did not constitute a "packaged building" within the meaning of subdivision 7 of the ironworker regulation. Leatherwood claims the meaning of "packaged building" is so plain and unambiguous that the school addition simply cannot constitute a "packaged building." Therefore, Leatherwood argues the issue presented to the trial court for decision was one of law, not fact. We find this argument unpersuasive for two reasons.

### 1. At Trial, Leatherwood Treated the Issue as One of Fact

In the court below, Leatherwood took the position that it was a question of fact whether the school addition fell within the

subdivision 7 definition of a "packaged building." Leatherwood specifically requested a finding of fact from the trial judge on this issue. Workers presented testimony from two witnesses focusing specifically on the factual reasons why the witnesses believed the school addition was this sort of packaged building. Leatherwood presented testimony from two witnesses who held the opposite view and explained the factual basis for their position. Per Leatherwood's request, the trial court issued a finding of fact on this disputed issue.

■ Leatherwood does not contend on appeal the trial court's decision lacks substantial evidentiary support.[6] Instead, Leatherwood seeks to recast the issue as one of law in order to convict the trial court of error on a theory never advanced at trial. This Leatherwood cannot do. It is bound on appeal by the position it took in the trial court and will not be heard on a different theory. *Howsmon v. Howsmon,* 77 S.W.3d 752, 757 (Mo.App.2002); *Reese v. Ryan's Family Steakhouses, Inc.,* 19 S.W.3d 749, 752 (Mo.App.2000). Moreover, it cannot complain on appeal about any alleged error in which, by its own conduct, it joined or acquiesced. *Coursen v. City of Sarcoxie,* 124 S.W.3d 492, 499 (Mo.App. 2004); *In re Marriage of Medlock,* 749 S.W.2d 437, 440 (Mo.App.1988). Assuming the trial court erred in treating the issue as one of fact, Leatherwood invited the error by its conduct.

### 2. The Installation of Metal Siding Falls Within the Occupational Title of Ironworker, Even If No Metal Building Is Being Constructed

■ There is an even more fundamental reason why we must affirm the

---

**6.** During oral argument, Leatherwood candidly conceded that if the issue is one of fact,

the trial court's judgment should be affirmed.

trial court's judgment. On appeal, we are "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). "Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id.*

Here, the trial court awarded Workers an ironworker's prevailing wage for installing metal siding on the school addition. The trial court based its decision on the language in subdivision 7 of the ironworker regulation that includes "[t]he installation of metal siding and metal roof decking, regardless of the fastening method or the object to which it is fastened[,]" within an ironworker's scope of work.

Leatherwood argues the trial court's ruling is in error because the installation of metal siding only falls within the occupational title of ironworker when performed in conjunction with the construction of a metal building. In making this argument, Leatherwood focuses exclusively upon the scope of work description set out in subdivision 7 of the ironworker regulation, which we quoted in full earlier in our opinion.

The answer to Leatherwood's argument is found in subdivision 10 of the ironworker regulation, which we quote in full below:

> 10. Other. The installation of all catwalks, stairways and hand rails made of aluminum, bronze or any type of metal, glass or plastic. The installation of ornamental iron, such as revolving doors, gates, handrails, window grills, jail and cell work and chain link fences.

The installation of dry storage bins, hoppers, chutes and conveyors where sand ore, coal or any dry component is stored or transferred. The erection, installation, removal, wrecking and dismantling of bridges, viaducts, cableways, tramway, monorail transportation systems. The erection, installation, removal, wrecking and dismantling of locks, gates, metal forms, railings (including pipe). The erection, installation, removal, wrecking and dismantling of frames in support of boilers. *The installation of metal siding and metal roof decking, regardless of the fastening method, or the object to which it is fastened.* The handling, burning, welding and tying of all materials used to reinforce concrete structures. The installation and erection of TV and microwave towers, self-supporting towers or guy towers. The installation of metal guardrails with metal posts and highway signage[.]

8 C.S.R. 30–3.060(8)(J)10 (emphasis added). As this lengthy quotation of subdivision 10 demonstrates, the disjunctive descriptions of work contained therein list ten different types of work which fall within the occupational title of ironworker.

In the case at bar, it is undisputed that Workers installed metal siding over masonry blocks, using hat channel to fasten the siding onto the building. This is a type of work expressly included within the scope of work description found in subdivision 10 of the ironworker regulation because it involved "[t]he installation of metal siding ... regardless of the fastening method, or the object to which it is fastened."[7] Therefore, Workers' installation

---

**7.** Leatherwood paid Workers the prevailing wage for a sheet metal worker for installing the metal siding. We have reviewed the scope of work descriptions for this occupa-

of metal siding fell directly within the occupational title of ironworker pursuant to subdivision 10 of the ironworker regulation.[8]

We conclude that the description of work found in subdivision 10, standing alone, supports the trial court's decision that Workers were entitled to an ironworker's prevailing wage for installing the metal siding. Therefore, the result reached by the trial court was correct. Regardless of whether the trial court was right or wrong in deciding that the school addition was a sheet metal packaged building—an issue we do not decide—the judgment of the trial court still must be affirmed.

The trial court's judgment does not erroneously declare or apply the law, is supported by substantial evidence, and is not against the weight of the evidence. Accordingly, we affirm. *See* Rule 84.13(d).

PARRISH, SHRUM, GARRISON, BARNEY, JJ., and RAHMEYER, C.J.-P.J., concur.

---

tional title found in 8 C.S.R. 30–3.060(8)(V). It contains no provision remotely similar to the scope of work description concerning the installation of metal siding found in subdivision 10.

8. This interpretation of the ironworker regulation is supported by the testimony from Workers' experts. Garrett and Owens each testified that installing metal siding was ironwork, whether or not it was performed in conjunction with the construction of a packaged metal building.