## JAS APARTMENTS, INC., Appellant and Cross–Respondent,

v.

## Mohamad Ali NAJI and Hala Naji, Respondents and Cross–Appellants.

### Nos. WD 66382, WD 66431.

Missouri Court of Appeals, Western District.

Aug. 14, 2007.

Paul D. Sinclair, Kansas City, for Appellant and Cross–Appellant.

Thomas B. Weaver, Winston E. Calvert, St. Louis, Randal J. Leimer, Kansas City, for Respondents and Cross–Appellants.

PAUL M. SPINDEN, *Judge.*

This is a contract dispute concerning Mohamad Ali Naji's agreement to sell a 137–unit apartment building in Kansas City to JAS Apartments, Inc. Although Naji and his wife had bought the building as partners, only Naji's name appeared on the property's deed, and he was the only person to sign the contract to sell the property to JAS Apartments. After a title insurer made an issue of Naji's wife needing to agree to the sale,[1] JAS Apartments demanded that she agree to the sale to avoid her claim of fraud against marital rights. Naji's wife refused to assent to the sale, so JAS Apartment refused to close the transaction and filed this lawsuit for breach of contract and for specific performance. It also sought the circuit court's declaratory judgment that the sale was not a fraud against the marital rights of Naji's wife.

The circuit court ruled that the sales contract terminated on its own terms and that neither party was entitled to relief. We reverse the circuit court's judgment in part and affirm in part, and we remand for further proceedings.

Naji agreed to sell the building, situated in the 500 block of East Armour Boulevard and known as The Newbern, to JAS Apartments for $3.5 million. On November 20, 2002, the parties executed a standard form contract prepared by the Kansas City Metropolitan Board of Realtors. The contract obligated Naji to deliver a general warranty deed that conveyed "marketable fee simple title to the Property, free and clear of all liens and encumbrances, other than the Permitted Exceptions." The contract defined "permitted exceptions" as "[a]ny matters" that the title insurer set out in its commitment to insure the property's marketable title and that JAS Apartments did not object to in writing within 10 days after receiving the title insurance commitment. The contract provided, concerning objections raised by JAS Apartments, "If [Naji] does not cure the objections by closing, this contract shall automatically be terminated unless [JAS Apartments] waives the objections on or before Closing." The contract declared that time and "exact performance" were "of the essence."

Naji submitted an application for Chicago Title's insurance on November 21, 2002, but it did not issue a commitment to insure the property's title until January 8, 2003. This was well past the contract's 15–day deadline for Naji's "caus[ing] to be furnished to [JAS Apartments] a current commitment to issue the policy[.]" Chicago Title's commitment included a schedule, entitled Schedule B, which purported to contain exceptions to Chicago Title's insurance coverage. Among the schedule's provisions was one that said, "The spouse, if any, of Mohamad Ali Naji must join in the proposed agreement."

Naji endeavored to get his wife's consent to the sale, but she refused. On December 10, 2002, Naji informed JAS Apartments of his wife's refusal, but he promised to continue trying to get her consent. On February 10, 2003, a representative of JAS Apartments telephoned

---

1. As will be discussed *infra,* the title insurer did not make clear whether it was considering its declaration that Naji's wife "join in the proposed agreement" to be an exception to its coverage or a condition to its issuing a policy insuring title to the property.

Naji to ask about the status of the sale scheduled for closing the next day and learned that Naji's wife had not consented to the sale and would not. Because JAS Apartments anticipated that Naji would be unable to deliver marketable title without his wife's consent, it refused to close the transaction and filed this lawsuit.

�enWe first consider whether or not the circuit court correctly concluded that the contract terminated under its own terms. The circuit court reasoned that JAS Apartments had objected to the provision in Chicago Title's commitment to issue title insurance concerning Naji's spouse and Naji did not resolve the objection. The circuit court said in its conclusions of law:

> The Court ... cannot enforce the contract because there is no contract to enforce. By its terms, the contract has terminated. Specifically, ... the contract states that if the purchaser objects to title matters, seller has until closing to cure the objections or the contract *automatically*[2] terminates, unless the purchaser waives its objection. Prior to and following the scheduled closing, Plaintiff's broker and counsel objected to the issue of Defendant Hala[ Naji]'s marital interest as set forth in the Title Commitment. Defendant Ali [Naji] was unable to cure the buyer's title objection at or prior to closing and Plaintiff did not waive the objection. Therefore, pursuant to the terms of the contract, the

contract terminated when buyer failed to close the transaction.

The circuit court's conclusion that the contract self-terminated was wrong. The contract specified that, before it could be deemed to have terminated automatically, two conditions had to occur: (1) JAS Apartments had to object to some issue in the title insurance commitment in writing within 10 days of receiving the title commitment, and (2) Naji had to fail to resolve the objection. JAS Apartments never made a written objection concerning the issue of Naji's wife joining in the sales agreement. Its objection—assuming it was an objection—therefore did not operate to terminate the contract. The contract remained in force, and the parties were obligated to perform their duties under it.[3]

Relying on *Gilmartin Brothers, Inc. v. Kern*, 916 S.W.2d 324 (Mo.App.1995), the Najis argue that JAS Apartments waived the contract's requirement that their objection be in writing. *Gilmartin* does not support the Najis' position. That case involved a contract for construction and sale of a house in which the parties orally agreed to numerous price changes and ignored their contract's requirement that modifications to the contract be in writing. The seller incurred extra expenses in building the house in reliance on the parties' oral agreements to modify the contract. In enforcing the oral modifications in apparent contravention of the contract, the *Gilmartin* court explained, "Parties

---

2. Emphasis in original.

3. Chicago Title perhaps did not intend for the issue of Hala Naji's joining in the agreement to be an exception to its coverage, but intended for it to be a requirement for issuance of its insurance policy. In other words, it may have intended to condition its issuance of insurance on Hala Naji's joining in the sales agreement. Given the placement and wording of the provision, we cannot determine

whether it was an exception or a requirement. It is a matter of ambiguity. If Chicago Title intended for the provision to be a requirement for issuance of a policy insuring the property's title, the contract certainly did not terminate. Indeed, in that instance, the circuit court may well deem Naji to be in breach of contract for failing to perform his obligation to cause Chicago Title to issue a policy insuring the property's title.

may by agreement establish a practice, a method of modifying the terms of the contract, which the parties accept as complying with the contract.... Waiver of a writing requirement may be established by presenting evidence the parties agreed to the changes and the changes were completed." *Id.* at 329. The *Gilmartin* court held that the parties had waived the contract's writing requirement by "establish[ing] a practice of communicating changes or additions to the contract informally." *Id.*

■ The Najis' dispute with JAS Apartments differs significantly from the dispute at issue in *Gilmartin.* We find nothing in the record indicating that the Najis and JAS Apartments engaged in any practices that evidenced that they had altered the contract's terms. "For conduct to rise to the level of waiver, ... [it] 'must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible.'" *Thompson v. Chase Manhattan Mortgage Corporation,* 90 S.W.3d 194, 207–08 (Mo. App.2002) (citation omitted). JAS Apartments' inquiry and discussion of the problem with Naji did not constitute waiver of the contract's writing requirement. *See Keltner v. Sowell,* 926 S.W.2d 528, 531 (Mo.App.1996).

Hence, we reverse the circuit court's judgment on the ground that it erroneously concluded that the contract terminated under its own terms. We remand for the circuit court to consider whether or not Naji breached the agreement and, if so, what the appropriate remedy should be.

■ In addition to seeking damages for breach of contract, JAS Apartments asked the circuit court to order Naji's specific performance of the contract and to declare that Hala Naji did not have a valid claim under Section 474.150, RSMo 2000, for fraud against marital interests. Although the circuit court ruled that the parties did not have an enforceable contract, the circuit court went on to advise that it could not have granted specific performance anyway because Hala Naji was not a party to the contract and because JAS Apartments did not perform its obligations under the contract and had "unclean hands." The circuit court refused to consider JAS Apartments' action for declaratory judgment because the issue of Hala Naji's marital interest was not ripe for adjudication until after completion of the conveyance and after either her husband had predeceased her or the couple had divorced. We consider first the circuit court's conclusion that it should not consider JAS Apartments' plea for declaratory judgment.

■ Concerning the circuit court's conclusion that JAS Apartments' action for declaratory judgment was premature, the circuit court was correct that, generally, a declaratory judgment action lies only when a controversy between the plaintiff and defendant is so immediate "that the court should[,] on the basis of the controversy stated, proceed to determine it." *Nations v. Ramsey,* 387 S.W.2d 276, 279 (Mo.App. 1965). A declaratory judgment action does not lie when the plaintiff seeks the circuit court's determination of future rights or controversies in anticipation of events that have not occurred, or when the plaintiff can articulate only a fear that the defendant may assert a claim against him or her. *Ferrell v. Mercantile Trust Company,* 490 S.W.2d 397, 400 (Mo.App.1973). It is not appropriate for "hypothetical or speculative situations that may never come to pass." *Missouri Soybean Association v. Missouri Clean Water Commission,* 102 S.W.3d 10, 25 (Mo. banc 2003). The Supreme Court set out these elements for a valid declaratory judgment claim:

(1) [A] justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;" (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Id.* (citation omitted).

In its declaratory judgment action, JAS Apartments sought the circuit court's judgment that Naji's sale of the property was not in fraud of Hala Naji's marital rights codified in Section 474.150.2, RSMo 2000. This statute says, "Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown."

The circuit court erroneously concluded that Hala Naji's claim under the statute was only a potential future claim that would not become ripe for consideration in a declaratory judgment action until her husband predeceased her. To the contrary, the Supreme Court instructed, in *Reinheimer v. Rhedans,* 327 S.W.2d 823, 829 (Mo.1959), that Section 474.150 does not "eliminate or limit the right of a spouse to sue to set aside a deed for fraud *at any time*[.]"[4] Moreover, the Supreme Court, in *Wilkinson v. Vaughn,* 419 S.W.2d 1 (1967), treated the issue of a spouse's rights under Section 474.150 as ripe for consideration in a situation quite similar to that arising in this case. In

*Wilkinson,* the defendant was unmarried when he signed a contract to sell property on which only his name appeared on the deed. The defendant married several months after entering into the contract but did not convey the land to the plaintiff. When the plaintiff sued for specific performance, the defendant contended that conveyance of the property was impossible because his wife refused to sign the deed, preventing him from conveying merchantable title. *Id.* at 8. Noting the testimony of the defendant's wife that the land was her parents' homeplace, that she was born there, and that she had told her husband that she would not sign a deed because it was her old homeplace, *id.* at 5, the Supreme Court declared that Section 474.150 was "not applicable under the facts here[.]" *Id.* at 8. Hence, that Naji had not predeceased his wife and they remained married did not mean that the issue of whether or not Naji's conveyance of the property would be a fraud on his wife's marital rights was not ripe for adjudication in JAS Apartments' action for declaratory judgment.

■ The Najis argue that, even if the issue is justiciable, JAS Apartments did not have standing to pursue a declaratory judgment. They assert that marital rights to property constitute personal rights that only a surviving spouse can raise, and, obviously, JAS Apartments is not a surviving spouse.

■ We agree that only a surviving spouse can initiate an action to attack a conveyance as being in fraud of marital rights. *McDonald v. McDonald,* 814 S.W.2d 939, 946 (Mo.App.1991). JAS Apartments, however, is not seeking a declaratory action to enforce Hala Naji's marital rights. It is seeking a declaration, as the Supreme Court declared in *Wilkin-*

---

4. We added the emphasis.

*son,* that her rights have not been defrauded, contrary to the presumption mandated by Section 474.150.2. JAS Apartments has a personal interest at stake in obtaining such a declaration. Lack of such a declaration undoubtedly will affect materially the value of the title that it would have in the apartment buildings. This was sufficient to provide JAS Apartments with standing. *Moynihan v. Gunn,* 204 S.W.3d 230, 233–34 (Mo.App.2006).

Although Hala Naji may never pursue a suit regarding fraud on her marital rights under Section 474.150.2, JAS Apartments established a sufficient interest to assert its declaratory judgment action. The threat posed by her potential claim presented a real, substantial, presently-existing controversy for which the circuit could have granted relief. JAS Apartments had a legally protectable interest at stake, and the controversy was ripe for judicial determination. JAS Apartments did not have an adequate remedy at law. Its declaratory judgment action, therefore, was justiciable. The circuit court's ruling on the issue would not be an advisory decree on a purely hypothetical situation because the cloud on JAS Apartments' title to the property would not be hypothetical.

The Najis also argue that Section 474.150.2 requires a completed conveyance for a justiciable controversy to exist under the statute. They assert that, because the conveyance has not been completed, the controversy surrounding Hala Naji's potential claim is not justiciable. We disagree.

■ Naji and JAS Apartments have signed a contract requiring Naji to convey title of the property to JAS Apartments. When a seller and buyer bind themselves by contract to convey land and to pay for it, equity regards the buyer as equitable owner of the property, and the seller holds legal title in trust for him. *Jaycox v. E.M.*

*Harris Building Company,* 754 S.W.2d 931, 933 (Mo.App.1988). Should the circuit court grant specific performance to JAS Apartments, a conveyance will then be completed.

■ In addition to damages for breach of contract and declaratory judgment, JAS Apartments asked the circuit court to order specific performance, ordering Naji to convey marketable title to it. The circuit court concluded that it was powerless to consider specific performance on several grounds.

It first concluded that it was powerless to order specific performance because Hala Naji was not a party to the sales contract. The situation in this case is identical in this regard to that in *Wilkinson,* 419 S.W.2d at 1. In that case, the seller argued that specific performance was improper because he would be obligated to perform an impossible task because his wife refused to join in the deed. *Id.* at 8. The Supreme Court noted that abolishment of dower in Missouri's probate code in 1955 and the rights recognized in Section 474.150 demonstrate that "there can be conveyances of separate property of a spouse without the other spouse joining." *Id.* This was also the Supreme Court's conclusion in *Lazare v. Hoffman,* 444 S.W.2d 446, 452 (Mo.1969).

We recognize that the buyer in *Wilkinson* had expressed a willingness to take such title as the seller had, but so has JAS Apartments. Although JAS Apartments' sales contract required Naji to convey "marketable fee simple title ... free and clear of all liens and encumbrances," JAS Apartments agreed to make exceptions for "permitted exceptions." In other words, JAS Apartments was willing to take what title Naji had, provided it had the opportunity to raise objections.

■ Hence, as the Supreme Court held in *Wilkinson*, so long as the presumption of fraud codified in Section 474.150 is not applicable to a sale, the spouse's refusal to join in the deed does not block specific performance. Upon remand, therefore, should the circuit court determine that Naji's conveyance of the property did not defraud his wife of her marital interests in the property, it is free to order specific performance.

■ The circuit court's second reason for refusing to grant specific performance was that JAS Apartments was not entitled to this remedy because it did not perform its contractual duties. The circuit court noted that JAS Apartments did not "attempt[ ] to close on the contract." The circuit court held:

> Defendant Ali [Naji] was always ready to fully perform his obligations under the contract. Defendant Hala[ Naji's] refusal to sign either the contract or a deed does not relieve Plaintiff [JAS Apartments] of its obligations under the contract, because Defendant Hala [Naji] was never a party to the contract. The doctrine of anticipatory repudiation does not apply to parties not in privity to a contract. There is no evidence to support a finding that there was an anticipatory breach by Defendant Ali [Naji].

We disagree that the circuit court had no evidence to support a finding that Naji anticipatorily repudiated the contract, excusing JAS Apartments' obligation to perform.

■ Anticipatory repudiation occurs when " 'a party to a contract repudiates that contract by manifesting, by words or conduct a positive intention not to perform.' " *Jetz Service Company, Inc. v. Botros*, 91 S.W.3d 157, 163 (Mo.App.2002) (citation omitted). Naji undisputedly declared that his wife would not join in the sale, but we do not find a contractual obligation that he obtain his wife's signature on the contract. We do find a requirement that he obtain a policy insuring marketable fee simple title to the property subject to any exceptions in the title insurance to which JAS Apartments did not object.

This brings us squarely to the issue of whether or not Chicago Title's provision concerning Hala Naji's joining in the agreement was an exception or a requirement. *See* Note 3, *supra*. If it was a requirement, the circuit court may have a basis for finding that Naji anticipatorily repudiated the contract when he declared that Hala Naji would not join in the sale because that would have thwarted him from fulfilling his obligation to provide title insurance. If a party "unqualifiedly undertakes to do that which later he finds he cannot perform, he should suffer the liability the law imposes upon the contract breaker." *Robinson v. Pattee*, 359 Mo. 584, 222 S.W.2d 786, 788 (1949). If, on the other hand, the circuit court determines that the provision was an exception, it may have a basis for finding that Naji did not anticipatorily breach the contract because Hala Naji's signature was not required and that JAS Apartments did not object in writing to the exception. In the latter case, perhaps, the circuit court could conclude that JAS Apartments breached the contract by refusing to close.

Resolution of this issue depends on the circuit court's factual finding of whether or not the title insurer intended the title insurance commitment to require Hala Naji's joining in the contract or whether or not Hala Naji's joining in the contract was an exception to the promised title insurance. Upon remand, the circuit court will resolve the issue.

■ JAS Apartments further complains that the circuit court erred in deem-

ing it to have unclean hands by virtue of its not obeying state statutes. The circuit court held:

> Buyer failed to obtain a certificate of authority from the Secretary of State, pursuant to RSMo 351.572 until eight (8) days *following*[5] the scheduled date of closing on the contract. Closing on the contract would have constituted transacting business in this state as Plaintiff [JAS Apartments] would have been assigned the leases of all of the tenants residing at the subject property. RSMo 351.572 does not allow a foreign corporation to transact business in Missouri without a certificate of authority. Therefore, Plaintiff [JAS Apartments] could not have lawfully closed the contract without first obtaining such a certificate. Because Plaintiff [JAS Apartments] could not have closed legally on the designated date of closing, it is not entitled to specific performance.

"The doctrine of unclean hands is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy." *Sangamon Associates, Ltd. v. Carpenter 1985 Family Partnership, Ltd.*, 165 S.W.3d 141, 145 (Mo. banc 2005). The doctrine of unclean hands applies when necessary to "promote[ ] right and justice by considering all of the facts and circumstances of a particular case." *Id.* It " 'applies only to a party who shows he was injured by the asserted inequitable conduct.' " *Simcox v. Obertz*, 791 S.W.2d 440, 443 (Mo.App.1990) (quoting *Osterberger v. Hites Construction Company*, 599 S.W.2d 221, 229 (Mo.App.1980)).

The circuit court erred in applying the doctrine to this case. Even had the sale closed, the Najis would not have been harmed by JAS Apartments' not obtaining a certificate of authority from the Secretary of State before the closing. Moreover, JAS Apartments' failure to obtain the certificate of authority was not directly connected with the contract for sale and title commitment, which is the subject of this litigation.

JAS Apartments further alleges that the circuit court erred in finding that money damages that JAS Apartments purportedly sustained in not completing a "1031 exchange"[6] were unforeseeable and speculative and, therefore, not recoverable. The parties presented evidence on the speculative nature of the damages that JAS Apartments may have incurred as a result of its not completing the 1031 exchange. The circuit court's holding that the loss that JAS Apartments may have incurred was too speculative to award damages is not against the weight of the evidence. We affirm its ruling on this issue.

The Najis cross appeal. They allege that the circuit court erred in not awarding them attorney fees. The contract for sale contained this provision:

> If, as a result of a default under this Contract, either Seller or Buyer employs an attorney to enforce its rights, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party in connection with the default.

The circuit court held that it could not award attorney fees to the Najis because the contract had terminated by its own terms. Because we have determined that

---

5. Emphasis in the original.

6. Federal statute, 26 U.S.C. Section 1031, allows the deferment of capital gains taxes when a party sells an asset and reinvests the proceeds of the sale in a similar asset within a specific period.

the contract did not terminate by its own terms, the circuit court erred in not considering an award of attorney fees to the parties. Upon remand, in resolving the issues in this case, it shall consider ordering attorney fees in accord with this provision.

VICTOR C. HOWARD, Chief Judge, and RONALD R. HOLLIGER, Judge, concur.