

# Missouri Court of Appeals
## Southern District

### Division One

GARY TURNER,                          )
                                      )
    Plaintiff-Respondent,             )
                                      )
v.                                    )    No. SD32879
                                      )    Filed: 12-11-14
JANET L. WESSLAK and ROBERT           )
WESSLAK,                              )
                                      )
    Defendants-Appellants.            )

APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Kelly W. Parker, Circuit Judge

## AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS

This case involves a "Pasture Lease" (the lease) signed by Jan Wesslak (Jan) as landlord and Gary Turner (Turner) as tenant.[1] The land subject to the lease was purchased by Jan with money she inherited from her mother, and title to the land was in Jan's name alone. After a dispute arose concerning the lease, Turner filed a two-count petition against Jan and her husband, Bob Wesslak

---

[1] Because the defendants share the same surname, we refer to them collectively as the Wesslaks and individually by their given names for purposes of clarity.

(Bob). The two pleaded theories of recovery were breach of the written lease and quantum meruit. Following a bench trial, the trial court entered judgment in favor of Turner and against the Wesslaks on both counts of Turner's petition.[2]

Jan did not appeal the entry of judgment against her. Bob has appealed the entry of judgment against him. He contends the trial court misapplied the law in entering judgment against him on either count of the petition because Bob is neither a party to the lease nor an owner of the land subject to the lease. We agree. Therefore, we affirm the judgment as to Jan, reverse the judgment as to Bob and remand with directions that the trial court enter a judgment in Turner's favor against Jan only.

### Factual and Procedural Background

In 2008, Jan purchased 280 acres of land in Dent County. Jan used money she inherited from her mother to buy the property. The two deeds conveying the property identified the grantee as "Janet L. Wesslak, a married person[.]" Bob's name does not appear on either deed. The deeds were duly recorded.

In April 2010, Turner was looking for additional pasture land to raise cattle. He learned that 280 acres were available for lease four miles from his farm. Turner met with the Wesslaks and was instructed to negotiate with Jan. Bob found a contract on the internet and put together the lease. Jan signed the lease as landlord, and Turner signed as tenant. Bob did not sign the lease. In the lease, Jan agreed to lease the 280 acres to Turner for five years "to occupy and use for pasture purposes[.]" Both parties agreed to "[p]rovide loading and

---

[2] Jan also filed a counterclaim, which the court denied. The counterclaim is not at issue in this appeal.

2

unloading facilities" by building a corral. Turner was to provide labor, and Jan was to provide the materials. At the time Turner signed the lease, he wrote a check for $2,500 payable only to Jan. Turner then built the corral on Jan's property.

A few months later, a dispute arose concerning the lease. According to Turner, the Wesslaks cut hay on the property and bushhogged certain fields, reducing the pasture available to feed his cattle. Turner terminated the lease and removed his cattle.

In December 2010, Turner filed a two-count petition naming the Wesslaks as defendants. The theory pleaded in Count I was breach of the written lease by both Jan and Bob. The theory pleaded in Count II was quantum meruit for "construction of improvements" on Jan's property, and damages on that count were sought from both Jan and Bob. In the first amended petition, Turner alleged in Count I that Bob was bound by the terms of the lease because he: (1) "ratified [Jan's] act of entering into the lease"; and (2) "adopted the acts of his spouse with knowledge of the contents of the agreement." With respect to Count II, Turner alleged that the work he performed in constructing the corral "was for [the Wesslaks'] use and benefit."

The case was tried to the court on the pleaded theories of breach of contract and quantum meruit. Before ruling on the case, however, the court allowed the parties additional time to prepare briefs on certain issues. In a post-trial brief, Turner argued that Bob should be held responsible for breach of the written lease because: (1) Bob "has a legal right in the land, as husband of [Jan]"; and (2) Jan "signed the lease as his agent."

3

The trial court found in Turner's favor and entered judgment against both Jan and Bob for $59,854.98 on Count I and $3,151.48 on Count II. This appeal followed.

## Standard of Review

Appellate review in this court-tried case is governed by Rule 84.13(d).[3] "This Court must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." **Grider v. Tingle**, 325 S.W.3d 437, 440 (Mo. App. 2010). "We independently evaluate whether the trial court properly declared or applied the law to the facts presented." **Mortenson v. Leatherwood Constr., Inc.**, 137 S.W.3d 529, 531 (Mo. App. 2004).

## Discussion and Decision

Bob presents five points for decision. In his first four points, he contends the trial court erred by holding Bob liable for breach of the written lease pursuant to Count I. Bob argues that the trial court's ruling resulted from a misapplication of the law because: (1) Bob is not a party to the lease; (2) Bob does not own the land subject to the lease; (3) Bob's marital interest in the land pursuant to § 474.150 as Jan's husband was an inchoate expectancy that did not constitute an estate or interest in him; and (4) Jan could not have been Bob's agent for the purpose of leasing the land. In Bob's fifth point, he contends the trial court erred by holding Bob liable in quantum meruit pursuant to Count II because he did not

---

[3] All references to rules are to Missouri Court Rules (2014). All references to statutes are to RSMo (2000).

benefit from the construction of the corral on land owned by Jan. For the reasons set forth below, we conclude that each of Bob's points has merit.

*Point I and II*

In Bob's first and second points, he argues that the trial court misapplied the law by entering judgment against Bob on Count I for breach of the written lease because he is neither a party to the lease nor an owner of the land subject to the lease. We agree. It has long been a basic tenet of contract law that "one not a party to a contract is not bound thereby and is not liable for breach of a contract to which he is not a party." ***Kahn v. Prahl***, 414 S.W.2d 269, 278 (Mo. 1967).[4] In addition, Bob "did not own the property and hence could not lease it." ***Drzewiecki v. Stock-Daniel Hardware Co.***, 293 S.W. 441, 444 (Mo. App. 1927).[5]

Bob also could not be held liable for breach of the lease on the principle that he ratified or adopted Jan's act of entering into the lease. Ratification is the adoption or confirmation by a principal of an unauthorized act performed by an agent on the principal's behalf. ***Egnatic v. Nguyen***, 113 S.W.3d 659, 676 (Mo.

---

[4] *See also* ***Landstar Investments II, Inc. v. Spears***, 257 S.W.3d 630, 632 (Mo. App. 2008) (holding that "a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it"); ***Continental Cas. Co. v. Campbell Design Group, Inc.***, 914 S.W.2d 43, 44 (Mo. App. 1996) (same holding); ***Kansas City Downtown Minority Development Corp. v. Corrigan Associates Ltd. Partnership***, 868 S.W.2d 210, 223 (Mo. App. 1994) (holding that "only parties to a contract are bound by the terms of that contract").

[5] *See also* ***Letsinger v. Drury College***, 68 S.W.3d 408, 411 (Mo. banc 2002) (the first essential element of a landlord-tenant relationship is a reversion in the landlord); ***Robertson v. North Inter-River Drainage Dist.***, 842 S.W.2d 544, 546 (Mo. App. 1992) (defining a "reversion" as "the residue of an estate left in a grantor when he has transferred a lesser estate than he owned"); ***Marden v. Radford***, 84 S.W.2d 947, 954 (Mo. App. 1935) (also holding that an essential element of the landlord-tenant relationship is that "there must be a reversion in the landlord").

App. 2003). In contract law, ratification is an act which converts an otherwise voidable contract into one which is valid and enforceable. *Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 668 (Mo. App. 2002). These principles have no application here because Jan was a disclosed principal acting on her own behalf in signing a lease of real property owned solely by her. *See Unlimited Equipment Lines, Inc. v. Graphic Arts Centre, Inc.*, 889 S.W.2d 926, 936 (Mo. App. 1994) (holding that defendants did not prove ratification because there was no evidence of an unauthorized agent acting for the principal). Accordingly, Points I and II are granted.

*Points III and IV*

Points III and IV of Bob's brief address the two theories raised by Turner in his post-trial suggestions for holding Bob liable for breach of contract as alleged in Count I, even though he was not a party to the lease, because he: (1) "has a legal right in the land, as husband of [Jan]"; and (2) Jan "signed the lease as his agent."

Point III contends the trial court misapplied the law by relying on § 474.150.2 to hold Bob liable for breach of the lease. We agree. The lease signed by Jan was both a conveyance and a contract. *See, e.g., Fuller v. TLC Prop. Mgmt., LLC*, 402 S.W.3d 101, 104 (Mo. App. 2013). Section 474.150, which is part of the probate code, states in relevant part:

> Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown.

6

§ 474.150.2. The purpose of this subsection is to protect the interests of the non-conveying spouse. *In re Clark*, 384 B.R. 563, 565 (Bankr. W.D. Mo. 2008). The legislature has done so by giving the non-conveying spouse a statutory cause of action to set aside a conveyance in fraud of that spouse's marital rights. *See JAS Apartments, Inc. v. Naji*, 230 S.W.3d 354, 360-61 (Mo. App. 2007); *McDonald v. McDonald*, 814 S.W.2d 939, 946 (Mo. App. 1991). Turner has not cited any cases, nor have we found any in our independent research, in which § 474.150.2 has been used as a sword to impose liability upon the non-conveying spouse, rather than as a shield to undo the fraudulent conveyance. Turner's construction of § 474.150.2 is neither supported by the language of the statute nor the purpose it was intended to serve. Point III is granted.

Point IV addresses Turner's argument that Bob could be held liable for breach of the lease because he was an undisclosed principal, and Jan signed the lease as Bob's agent. Bob contends the trial court misapplied the law by relying on this agency theory. He argues that Jan was a disclosed principal who could not bind Bob to the terms of a lease concerning property he did not own. We agree. Since Jan was the sole owner of the leased land and signed the lease on her own behalf, Bob could not have been the undisclosed principal on that contract. Moreover, Turner cannot use this principle of agency law to hold both Jan and Bob liable for breach of the same agreement:

> An agent who enters into a contract without disclosing his agent status or who discloses his agent status but not the identity of the principal is considered an agent for an undisclosed principal and can be personally liable on the contract. However, where an agent acting with actual authority makes a contract on behalf of an undisclosed principal, the principal is also a party to and liable under the contract. *Under those circumstances, either the agent of the undisclosed principal or the undisclosed principal – but not*

7

> *both – may be held liable, depending upon the plaintiff's preference.*

***Lorimont Place, Inc. v. Jerry Lipps, Inc.***, 403 S.W.3d 104, 107 (Mo. App. 2013) (citations omitted and emphasis added). By alleging and proving that Jan was liable for breach of the written lease agreement she signed, Turner is precluded from also seeking to hold Bob liable for breach of the same contract as an undisclosed principal. Point IV is granted.

Point V contends the trial court erred as a matter of law in finding Bob liable in quantum meruit for improvements to Jan's land under Count II because Bob did not own the land. We agree. "Quantum meruit is a remedy to enforce quasi-contractual obligations and is generally justified on the theory of unjust enrichment." ***Cotner Productions, Inc. v. Snadon***, 990 S.W.2d 92, 98 (Mo. App. 1999). Unjust enrichment can occur only when a person retains a benefit without paying its reasonable value. ***Miller v. Horn***, 254 S.W.3d 920, 924-25 (Mo. App. 2008). To recover under quantum meruit, it is the plaintiff's burden to show that his services "benefited" the defendant. ***Id***. Here, Turner argued Bob generally benefited as Jan's husband from "the lease, the addition of the corral, and from the sale of the produce of the land, all of which arose out of the lease relationship." It is clear Turner's claim for reimbursement of his materials and labor in building the corral arose out of both: (1) the lease, of which only Jan was a party; and (2) improvements to the land, which only Jan owned. Turner has shown Jan benefited from the corral as the property owner, but not Bob. *See, e.g.*, ***JB Contracting, Inc. v. Bierman***, 147 S.W.3d 814, 820 (Mo. App. 2004) (holding that, for the purposes of plaintiff's unjust enrichment claim, the benefit of improvements to property was attributed to the limited liability company that

8

owned the property and did not flow to the defendant, who owned the company). Accordingly, the trial court erred in finding Bob liable in quantum meruit under Count II. Point V is granted.[6]

Thus, Bob is not liable under either Count I or Count II of Turner's amended petition. Accordingly, we affirm the judgment as to Jan, reverse the judgment as to Bob and remand with directions for the trial court to enter a judgment in Turner's favor against Jan only.

JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, JR., C.J./P.J. – CONCUR

---

[6] In Turner's brief, he argues that we should affirm the judgment against Bob on the grounds of joint venture, fraud, conspiracy and tortious interference with contract. As none of these theories were raised below, we cannot do so. "While it is true that we may affirm a trial court's judgment if cognizable under any theory – even one different than the theory on which the judgment was based, the alternative theory must have been pled and supported by the evidence." *Lowe v. Hill*, 430 S.W.3d 346, 350 (Mo. App. 2014). "It is an elementary rule of appellate review that a case is reviewed only upon the theory on which it was tried." *Cottonhill Inv. Co. v. Boatmen's Nat'l Bank*, 887 S.W.2d 742, 744 (Mo. App. 1994). When an issue "was not recognized by the parties as an issue during the trial, the judgment should not be upheld on that basis." *Id*.; *see also Heffernan v. Reinhold*, 73 S.W.3d 659, 663 (Mo. App. 2002) ("we may not consider any theories advanced by the Plaintiffs for the first time on appeal, but only consider those properly before the trial court").