

# In the
# Missouri Court of Appeals
## Western District

HOLLIDAY INVESTMENT, INC,

        Appellant,

v.

HAWTHORN BANK,

        Respondent.

WD78640

OPINION FILED:

DECEMBER 8, 2015

**Appeal from the Circuit Court of Boone County, Missouri
The Honorable Kevin M.J. Crane, Judge**

**Before Division One: Anthony Rex Gabbert, P.J., Victor C. Howard, and Cynthia Martin,**

**JJ.**

Holliday Investments, Inc. (Holliday) appeals the circuit court's judgment in favor of

Hawthorn Bank (Hawthorn) on Holliday's claim that Hawthorn was unjustly enriched by a home

that Holliday built on property later foreclosed upon by Hawthorn. Holliday contends that the

circuit court misapplied the law in striking Holliday's demand for a jury trial. Holliday argues

that its claim was one of quantum meruit which is an action at law entitling Holliday to a jury

trial upon request, as evidenced by there being an MAI jury instruction for use in quantum

meruit actions. We affirm.

On July 17, 2012, Holliday filed its First Amended Petition against Hawthorn. Therein,

Holliday alleged that in 2008 it built an earth contact home on real estate owned by Richard and

Annette Sells (the Sells) during a time that Holliday had a contract with the Sells to purchase the real estate. Holliday alleged that, after the home was built, Hawthorn loaned money to the Sells and Sells Farms, Inc., who executed a note and deed of trust encumbering the real estate upon which the home was built. Holliday alleged that "[o]n information and belief Defendant was aware or should have been aware at the time it made the aforesaid loan that a third party, the Plaintiff, was constructing valuable improvements upon the real estate encumbered by the subject deed of trust." Holliday alleged that it had an equitable interest in the earth contact home which provided additional collateral to Hawthorn for which Hawthorn "did not confer value" to Holliday or anyone else. Holliday alleged that Hawthorn then foreclosed upon the property and became the owner of the property. Holliday alleged that Hawthorn would be "unjustly enriched" if it did not "reimburse" Holliday for the value of the home and, that, "[b]ased on quantum meruit, Plaintiff is entitled to recover the value of said earth contact home from Defendant."

On August 22, 2014, Holliday requested a jury trial. Holliday argued that its claim was one of quantum meruit and quantum meruit claims are triable to a jury. Hawthorn objected to Holliday's request, arguing that Holliday's claims were equitable in nature and, therefore, Holliday was not entitled to a jury. The circuit court issued an order striking Holliday's demand for a jury trial and, thereafter, the matter was tried before the court.

Holliday's evidence at trial presented a time frame different from that alleged in Holliday's petition with regard to when Hawthorn issued its loan to the Sells and when Holliday constructed the earth contact home. Holliday's own undisputed evidence showed that the Sells and Sells Farms, Inc. executed a real estate deed of trust as collateral for a loan from Hawthorn. The deed of trust was recorded on March 12, 2008. On March 25, 2008, Holliday entered into a contract to purchase the Sells's turkey business which included 683 acres of land as well as

2

turkey barns, cattle, and equipment located on the farm. The contract price was approximately 2.5 million dollars. Holliday did not conduct a title search prior to entering into the contract. Holliday and the Sells did not intend for there to be a closing date where all of the real estate and assets would be conveyed simultaneously in exchange for a total purchase price. Rather, the parties agreed that, as Holliday freed up capital, it would purchase part of the real estate and assets that were under contract. This allowed Holliday to engage in Section 1031 exchanges under the tax code. At least two of these transactions occurred prior to March of 2009. Prior to each transaction, Holliday conducted a title search that disclosed Hawthorn's deed of trust against the real estate, but Holliday did not read the title searches.

In March of 2009, Holliday began constructing an earth contact home that was completed in September of 2009. Chris Holliday, sole shareholder of Holliday, testified that he could have built the home on nearby land that he already owned, but chose to build the home on land not yet owned because the placement of the home in that location was more beneficial to Holliday. He testified that, the home was built for an Amish employee who oversaw the turkey farm and needed to be in close proximity to the turkey barns in the event of power failure or other potentially harmful events. Due to the employee/tenant being Amish, the home had plywood floors and various fixtures had not yet been installed. Chris Holliday testified that he was not sure if the home had trim on the doors or windows as his tenant worked on the home himself as he got the time. It was a part of the employee/tenant's contract that part of the employee's pay was having the home to live in. Chris Holliday testified that, due to the proximity of the home to the turkey barns and the barns' odors, the home would not be ideal for most people to live in.

The Sells defaulted on the loan with Hawthorn, and Hawthorn foreclosed its deed of trust on May 7, 2012. The bank was the sole bidder at the foreclosure sale and became the owner of

190 acres, including the real estate upon which the earth contact house was constructed. Chris Holliday testified at trial that he now owns the earth contact home and the property upon which it sits. He purchased the home along with 80 acres for $200,000 from an individual who purchased the property from Hawthorn after Hawthorn foreclosed.

After hearing the evidence, the circuit court found in favor of Hawthorn on Holliday's demand for reimbursement for the value of the earth contact home.[1] Holliday appeals.

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We will affirm under any reasonable theory supported by the evidence. *Williams v. State, Dept. of Social Sercies, Children's Div.*, 440 S.W.3d 425, 427 (Mo. banc 2014).

In Holliday's sole point on appeal, Holliday contends that the circuit court misapplied the law in striking its demand for a jury trial. Holliday argues that its claim was one of quantum meruit which is an action at law entitling Holliday to a jury trial upon request, as evidenced by there being an MAI jury instruction for use in quantum meruit actions.

We find that we need not decide whether Holliday would have been entitled to a jury trial on a properly pled quantum meruit claim because, even if Holliday could prove that the court erred in denying a jury trial, Holliday cannot prove that he was prejudiced by that denial.

---

[1]Hawthorn filed a counterclaim against Holliday alleging that from May 7, 2012 through November 26, 2012, and while Hawthorn owned the property, Holliday allowed its cattle to remain on the property without Hawthorn's consent, failed and refused to remove his cattle from the property, did not pay rent for the property or otherwise compensate Hawthorn for its use, and, therefore, Holliday would be unjustly enriched if not required to reimburse Hawthorn for its use of the property. The court found in favor of Holliday on Hawthorn's counterclaim.

"Quantum meruit is a remedy to enforce quasi-contractual obligations and is generally justified on the theory of unjust enrichment." *Turner v. Wesslak*, 453 S.W.3d 855, 860 (Mo. App. 2014) (internal citation and quotation marks omitted.) "Where there is no formal contract, a promise to pay for services or materials may be implied by the law." *City of Cape Girardeau ex rel. Kluesner Concreters v. Jokerst, Inc.*, 402 S.W.3d 115, 122 (Mo. App. 2013). The essential elements of a claim of quantum meruit are:

> (1) that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, (2) that the materials or services had reasonable value, and (3) that the defendant has failed and refused to pay the reasonable value of such materials or services despite the demands of plaintiff. *County Asphalt Paving, Co. v. Mosley Constr., Inc.,* 239 S.W.3d 704, 710 (Mo. App. E.D. 2007). 'The principal function of this type of implied contract is the prevention of unjust enrichment.' *Id.* (quoting *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 711 (Mo. App. E.D. 2002)). In quantum meruit, there is no requirement of an express agreement between the parties or a promise on the part of the party to be bound. *Id.*[2]

*Id.* at 122-123.

"To properly and sufficiently establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Brunner v. City of Arnold*, 427 S.W.3d 201, 233 (Mo. App. 2013) (overruled on other grounds by *Tupper v. City of St. Louis*, 468 S.W.3d 360 (Mo. banc 2015)).

While the lines are often blurred with regard to quantum meruit and unjust enrichment, we recognize these as separate causes of action. *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215,

---

[2]MAI 26.05, which Holliday argues proves a right to jury trial for quantum meruit claims, instructs that a jury must find for a plaintiff on a quantum meruit claim if it first finds that the plaintiff furnished specified goods or services to the defendant and, second, that the defendant accepted the goods or services.

225 n10 (Mo. App. 2007); *Johnson Group, Inc. v. Grasso Bros., Inc.*, 939 S.W.2d 28, 30 (Mo. App. 1997); *See also Patrick v. Koepke Const., Inc. v. Woodsage Const Co.*, 844 S.W.2d 508, 516 (Mo. App. 1992) (stating that "Missouri courts have tended to blur any distinction between unjust enrichment and quantum meruit.") Because quantum meruit is justified on the theory of unjust enrichment, it is understandable that both generally require that a benefit be conferred and inequitably retained. However, as shown above, the elements of each claim are not identical. Further, the amount of recovery is different for each cause of action. *Johnson Group, Inc.*, 939 S.W.2d at 30. For a quasi-contract based upon quantum meruit, recovery is based upon the reasonable value of the goods or services furnished to the defendant. *Id.* For a quasi-contract based upon unjust enrichment, recovery is not the actual amount of the enrichment, but the amount of enrichment which would be unjust for the defendant to retain. *Id.*

Here, Holliday insists that its claim is one of quantum meruit entitling it to a jury.[3] Yet, at trial, Holliday abandoned a necessary element to prevail on such a claim. Holliday admitted at trial that it had erred in alleging that Hawthorn accepted the land as collateral after the home was already built upon the land; Holliday admitted that the home was built after Hawthorn had a properly recorded lien on the property. Holliday advised the court that it was abandoning the allegation in its petition that "[o]n information and belief Defendant was aware or should have been aware at the time it made the aforesaid loan that a third party, the Plaintiff, was constructing valuable improvements upon the real estate encumbered by the subject deed of trust."

---

[3]At trial, Holliday distinguished quantum meruit and unjust enrichment by their forms of recovery and averred to the court: "[W]e have a quantum meruit claim; we don't have an unjust enrichment claim. Those are not the same thing. They're similar, but they're not the same thing."

Nevertheless, Holliday argued that Hawthorn's knowledge of the home was irrelevant to its claim of quantum meruit. Holliday argued that the bank had approximately 683 acres of collateral which had a certain value, and Holliday added to that value by building a house on that property. To recover on its claim of quantum meruit, Holliday argued that it only needed to prove that a benefit was conferred to Hawthorn by Holliday, and that it was unjust for Hawthorn not to pay for it. Holliday argued that it was not necessary that Hawthorn acknowledge or appreciate that it had received a benefit. Holliday further argued that MAI 26.05, the jury instruction for quantum meruit claims, proved its contentions by only requiring that a benefit be conferred and unjustly retained. Holliday makes these same arguments on appeal.

We find that, not only do these arguments misstate the law, but they also reveal that Holliday's evidence would not have supported submission of a claim of quantum meruit to a jury. Although a claim for quantum meruit does not require the existence of an express agreement between parties, it still requires that valuable goods or services were provided at the request, or with the acquiescence, of the beneficiary. By their nature, requests and acts of acquiescence require some form of knowledge. MAI 26.05, which Holliday argues proves its right to jury trial, advises that a jury must find for a plaintiff on a quantum meruit claim if it first finds that the plaintiff furnished specified goods or services to the defendant and, second, that the defendant "accepted" the goods or services. Acceptance, by its nature, also requires some form of knowledge. Holliday admitted at trial that Hawthorn had no knowledge of, and did not acquiesce in, Holliday's construction of the home upon the property. Thus, Holliday's undisputed evidence in support of its petition does not support the elements of a quantum meruit claim and, therefore, the issue could not have been submitted to a jury had there been one. "Any issue submitted to the jury in an instruction must be supported by substantial evidence from

7

which the jury could reasonably find such issue." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo.

banc 2010) (internal quotation omitted). "Substantial evidence is evidence which, if true, is

probative of the issues and from which the jury can decide the case." *Id.* (internal quotation

omitted). Consequently, even if Holliday could prove entitlement to a jury, it cannot prove that

denial of a jury in this case was prejudicial.[4]

    Holliday's point on appeal is denied and we affirm the circuit court's judgment.[5]

_____
Anthony Rex Gabbert, Judge

All concur.

---

[4]We emphasize that, characterization of a case in terms of law or equity, thereby determining entitlement to a jury, "'depends on the issue tendered by the pleadings'" and not the evidence presented at trial. *See State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 89 (Mo. banc 2003) (quoting *Lee v. Conran*, 111 S.W. 1151, 1153 (1908)). Here, however, because Holliday's own undisputed evidence established that it was not entitled to a jury trial and, therefore, Holliday failed to show any prejudice based upon the trial court's ruling as to the right to a jury trial, we need not address Holliday's pleadings in this case.

[5]Although not addressed in Holliday's point relied on, Holliday contends in the body of its brief and more extensively in its reply brief that, because it sought only money damages, its claim was an action at law entitling it to a jury trial. Claims of error raised in the argument portion of a brief that are not raised in the point relied on are not preserved for our review. *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo. App. 2006). We decline to review this claim *ex gratia*.

8