

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| TAMMIE MCKINNEY, | ) | No. ED107400 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| MERCY HOSPITAL ST. LOUIS, | ) | Honorable Joseph S. Dueker |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 17, 2020 |

## Introduction

Mercy Hospital East Communities d/b/a Mercy Hospital St. Louis (Appellant) appeals

from the trial court's judgment, following a jury trial, in favor of Tammie McKinney

(Respondent) on Respondent's claim for disability discrimination under the Missouri Human

Rights Act (MHRA). We affirm.

## Facts and Background

On appeal, Appellant contests the sufficiency of the evidence. In the light most favorable

to the verdict reached, the facts at trial showed the following:

Respondent began her employment with Appellant as a housekeeper in 1999. She

received numerous positive performance reviews followed by merit raises and by most accounts

satisfactorily performed the tasks of her employment. In a 2013 performance evaluation

Respondent's supervisor commented, "[Respondent] is a great co[-]worker, she works hard to

ensure her job is done and takes pride in her work." Respondent also received praise from

individuals whose workspace she cleaned, who said her work was "fabulous," and that she "did a very good job...."

Over the years of her employment, Respondent took a number of leaves of absence in order to address her health issues. Some of these health issues were related to arthritis and degenerative lumbar disease.

In 2013, Appellant instituted a policy requiring certain employees to perform a "functional job screen" test. Respondent testified that when employees were informed of the new policy, they were told they would have to take the functional job screen test if they were off work for six weeks or longer. However, Appellant introduced evidence at trial suggesting other circumstances would prompt the test, such as leave for certain medical reasons. The screening test for housekeepers was developed by Sara Crain (Crain), a physical therapist employed by Appellant.

On March 27, 2014, Respondent requested a leave of absence for March 28 through March 31 to obtain a cortisone shot for back pain. Respondent returned to work on March 31, 2014, and worked for several days. On April 3, 2014, Respondent was called to the functional job screen department, where she was required to take a test under Crain's supervision. The test, devised by Crain, required not only that Respondent perform physical tasks related to her employment duties, but that she complete them in a specified way. Crain required Respondent to touch the floor by squatting with her knees 15 times. While Respondent was able to reach the floor by bending at her waist, she was unable to squat in the way Crain demanded. Respondent was informed she had failed the functional screen test and was told to leave work.

Respondent testified Appellant told her she could return to work if she received approval from her physician. Respondent went to see her physician, Dr. Victoria Ojascastro (Dr.

2

Ojascastro), a board-certified internal medicine specialist and Respondent's physician since 1997. Respondent obtained a note from Dr. Ojascastro stating that although Respondent was unable to squat at her knees or bend her back, she was able to safely bend at the waist with a straight back and was medically able to return to work. However when Appellant was given this note, Appellant told Respondent it was insufficient. Appellant placed Respondent on leave for 45 days, at the end of which Respondent would be required to retake and pass the functional job screen test to continue her employment. The test was scheduled to take place in May 2014. However, Respondent chose to reschedule the test because she was not feeling well on the day of, and feared she would fail her last opportunity to take it. The test was rescheduled for June 6, 2014. In the meantime, because Respondent had already exhausted her paid leave, she was not paid for the period between April 3, 2014 and June 6, 2014.

Prior to the June 6 test, Respondent participated in physical therapy sessions provided by Appellant. On May 27, 2014, Respondent obtained another note from Dr. Ojascastro approving her return to work on June 6 with no restrictions. On June 6, 2014, Respondent retook the functional job screen test under the supervision of Crain. Respondent was again unable to squat at her knees as required by Crain, causing her to fail the test.

Appellant informed Respondent she was unable to return to work as a housekeeper because she had failed the test. Appellant sent Respondent a letter stating pursuant to their displaced worker policy, Respondent was not being terminated at that time. Rather, Respondent would have 45 days to work with Appellant's recruiter to determine whether another position might be available to her. Respondent and Appellant present conflicting accounts as to what happened next. Respondent testified Appellant did not make contact and work with her as promised to find Respondent a new position; Appellant argues Respondent did not fully

3

participate in the recruitment process. After 45 days passed and Respondent did not obtain a new position with Appellant, Appellant officially terminated Respondent on November 12, 2014.

*Social Security Benefits Application*

During the period leading up to the functional job screen test and Respondent's eventual termination, she had been receiving periodic cortisone injections. These injections alleviated the symptoms of her arthritis, improving her ability to perform everyday physical tasks, including tasks associated with her employment as a housekeeper. Respondent testified that as of the time she stopped receiving a paycheck from Appellant, and subsequently lost her health insurance contributions, she became unable to afford these cortisone injections. As a result, her arthritis symptoms worsened and interfered with her ability to perform day-to-day tasks.

On July 15, 2014, Respondent applied to the Social Security Administration (SSA) for Social Security Disability (SSD) benefits. Her application averred she had become disabled May 18, 2014. In a later amendment Respondent asserted March 27, 2014, as the day she had become unable to work due to her disabling condition. Respondent's application listed various everyday activities that were negatively impacted by the arthritis in her back, knees, and hips. Respondent obtained the aid of a third-party company to complete her SSD application. Respondent's application resulted in her obtaining monthly SSD benefits.

*MHRA Claim*

In October 2015, Respondent filed a disability claim against Appellant under the MHRA. Respondent alleged she was "disabled" within the meaning of the MHRA because she had a qualifying condition, chronic arthritis throughout her body, but was able to perform the essential functions of her job with or without reasonable accommodation. Respondent alleged her termination and other treatment by Appellant entitled her to damages under the MHRA. As

evidence, Respondent offered her own testimony and the testimony of Dr. Ojascastro via video deposition, as well as testimonial evidence regarding Respondent's satisfactory work performance. Respondent also examined Crain regarding the functional job screen test. After a five-day trial, the jury returned a verdict in favor of Respondent, awarding her $17,000 in compensatory damages. The trial court also awarded $347,550 and $12,174 in attorney's fees and costs, respectively.

This appeal follows.

## Points Relied On

Appellant's first point claims the trial court erred by denying its motion for judgment notwithstanding the verdict (JNOV) because Respondent failed to present substantial evidence Respondent had a "disability" under the MHRA. Appellant's second point claims the trial court erred by denying its motion for JNOV because Respondent failed to present substantial evidence showing she was discriminated against because of her disability. Finally, Appellant's third point claims the trial court, and this Court, should apply the doctrine of judicial estoppel against Respondent for her MHRA claim because she made conflicting claims to the SSA in order to obtain SSD benefits.

## Standard of Review – Points I and II

"[G]ranting a motion for JNOV is a drastic action and should only be granted when reasonable persons could not differ on the correct disposition of the case." Merseal v. Farm Bureau Town & Country Ins. Co. of Mo., 396 S.W.3d 467, 470 (Mo. App. E.D. 2013). "A case may not be submitted [to the jury] unless legal and substantial evidence supports each fact essential to liability." Sanders v. Ahmed, 364 S.W.3d 195, 208 (Mo. banc 2012). "Substantial evidence is evidence, which, if true, is probative of the issues and from which the jury can decide

5

the case." Holliday Investments, Inc. v. Hawthorn Bank, 476 S.W.3d 291, 297 (Mo. App. W.D. 2015). "In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." Dhyne v. State Farm Fire and Cas. Co., 188 S.W.3d 454, 456-57 (Mo. banc 2006). "This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." Id. at 457.

Discussion

Point I

In order to make a submissible case of disability discrimination under the MHRA, Respondent must show: (1) she is legally disabled; (2) she was discharged; and (3) her disability was a factor in her discharge. Section 213.055[1]; DeWalt v. Davidson Service/Air, Inc., 398 S.W.3d 491, 499 (Mo. App. E.D. 2013). Section 213.010(5) of the MHRA defines "disability" as:

> [A] physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job...

Here, Appellant does not contest that Respondent's arthritis and degenerative spinal disease is a physical impairment which limits major life activities. Rather, Appellant argues Respondent failed to present evidence her impairment did not, with or without reasonable accommodation, interfere with the performance of her job as a housekeeper.

The evidence at trial was sufficient for the jury to have found Respondent was capable of performing her job despite her inability to pass Crain's functional job screen test. Respondent

---

[1] All statutory references are to RSMo (2000) unless otherwise indicated.

6

presented evidence of having received positive performance reviews from Appellant, as well as testimonial evidence from individuals who witnessed the results of Respondent's work and who found it satisfactory. Respondent also presented deposition testimony of Dr. Ojascastro. Dr. Ojascastro was aware of Respondent's physical limitations, but determined she was still able to safely perform her job as a housekeeper by bending at the waist instead of squatting. Dr. Ojascastro opined that with proper medical treatment Respondent could continue functioning in the workplace. Taken together, this evidence was sufficient to allow the jury to find Respondent's physical limitations did not interfere with the performance of her job.

On appeal, Appellant takes issue with the probative value of the above-mentioned evidence. It argues (1) the positive performance evaluations were too remote in time from Respondent's firing to be probative of her ability to perform her job at the time she was fired; (2) the testimony regarding satisfaction with the outcome of Respondent's work was not probative because Respondent would do her work while the offices were unoccupied, and thus no one was watching her work; and (3) Dr. Ojascastro's testimony lacked probative value because her examinations were perfunctory or nonexistent, and she lacked relevant knowledge of Respondent's job duties. Appellant also draws this Court's attention to various evidence on the record which might contradict evidence presented by Respondent.

On the whole, Appellant's argument proceeds by studiously ignoring the standard under which we review the jury's verdict. As stated above, on review we must view the evidence "in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." Dhyne, 188 S.W.3d at 456-57. At trial, Appellant was free to attack the credibility of Respondent's witnesses and introduce evidence that conflicted with Respondent's, just as the

7

jury was free to accept or reject any such evidence, weigh its probative value, and reach its own conclusions as the trier of fact. We are not at liberty to grant Appellant relief by supplanting the jury's view of the facts with our own. Appellant fails to show this record is so devoid of evidence supporting Respondent's claim that "reasonable persons could not differ on the correct disposition of the case." Merseal, 396 S.W.3d at 470.

Appellant also attempts to utilize the fact that Respondent was unable to squat during her functional job screen test to argue the evidence was insufficient to show Respondent was capable of performing her essential job duties, despite the fact she was able to reach the ground by bending at her waist. Appellant apparently considers squatting to be an essential function of housekeeping, regardless of whether Respondent was able to clean Appellant's facilities another way. In so arguing, Appellant implies it has sole discretion as employer to define the essential functions of jobs it offers. Appellant did argue and present evidence that squatting was the only safe way to perform the job of a housekeeper, and thus it was an integral part of the functional job screen test. However, the jury was free to reject Appellant's contention that the functional job screen proved Respondent could not perform the essential functions of her job.

A similar issue arose in Daugherty v. City of Maryland Heights, where the Missouri Supreme Court found there were genuine issues of material fact as to the essential functions of a police captain's job. 231 S.W.3d 814, 824 (Mo. banc 2007). The Supreme Court provided a list of factors to be considered when determining the essential functions of a job, including (1) the employer's judgment as to which functions are essential; (2) the written job description of the position; (3) the amount of time spent performing a particular function; (4) the consequences of not requiring the employee to perform the function; and (5) the past or current work experience of employees in similar jobs. Id. at 822. Notably, the employer's view on which functions are

8

essential is but one factor to be considered under this test. Although Appellant may feel strongly that squatting is an essential function of housekeeping, the record contains substantial evidence for the jury to have found Respondent could perform the essential functions of the job safely with her arthritis irrespective of the artificial functional job screen test. Such evidence includes showing Respondent was cleaning adequately without squatting, and had been cleared by her physician to continue working by bending at the waist.

After review of the record, we conclude Respondent proffered substantial evidence she was disabled within the meaning of the MHRA: she had a physical impairment which limited life activities, and which did not interfere with her ability to perform the essential function of her job. Appellant's Point I is denied.

## Point II

Appellant's second point claims the trial court erred by not granting its motion for JNOV because Respondent failed to proffer substantial evidence she was discriminated against because of her disability. By "discriminated against," we take Appellant to mean Respondent did not suffer an adverse employment action, and failed to establish any such action was taken because of her disability. Finding no error, we affirm.

As stated above, in order to prove a claim of discrimination under the MHRA Respondent must show she (1) was disabled, (2) was discharged, or suffered some other adverse employment action forbidden by the statute, and (3) her disability was a factor in the adverse employment action or discharge. Section 213.055; DeWalt, 398 S.W.3d at 499.[2]

---

[2] The Missouri legislature has since amended the MHRA to change the standard for establishing a causal connection between a plaintiff's disability and the adverse employment action. However, because Respondent's cause accrued before the changes took effect, we analyze her claim under the earlier standard. See Bram v. AT&T Mobility Servs., LLC, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018).

Turning to whether Respondent suffered an adverse employment action, we find it to be beyond dispute Respondent was discharged. Appellant concedes as much both in its motion for JNOV and on appeal. A portion of Appellant's brief appears to argue that placing Respondent on involuntary leave before discharging her was not an adverse employment action. But whether it was or not is immaterial here, as the record clearly shows she was eventually discharged.

The more salient issue is whether Respondent presented sufficient evidence to show the requisite causal connection between her disability and her discharge. Appellant argues it was not because of her disability Respondent was discharged, but because of her failure to engage with Appellant's recruiter to find a new position

Again, Appellant's argument proceeds by asking this Court to ignore the standard of review, and view the evidence in the light most favorable to Appellant. Conflicting evidence was presented at trial about the parties' respective participation in the job application process. In short, each accused the other of failing to maintain contact and participate in good faith with the process. Because conflicting accounts of crucial events were presented at trial, the jury was obligated to choose one over the other. Evidently, the jury chose to believe Respondent's account, that Appellant made no significant effort to follow its own policy to aid Respondent in applying for other positions with Appellant. This would mean Appellant's stated reason for discharging Respondent - that *she* did not participate in the recruitment process - is untrue and likely pretextual. The jury could also reasonably infer Appellant did not reassign Respondent because its ultimate goal was to permanently discharge Respondent because of her disability. The fact Respondent's disability was the reason she was put on leave in the first place supports an inference her disability was a factor in Appellant's decision not to facilitate Respondent's reassignment and ultimately discharge her.

Respondent presented other evidence suggesting her disability was a factor in her discharge. Respondent testified she was informed the functional job screen test policy would only trigger if she took six weeks or more leave, but Appellant required her to take the test after she took only a few days leave. This deviation from the stated policy might suggest Respondent was singled out because of her disability. Respondent also called into question the validity of the functional job screen test, showing Crain was not a physician, was not intimately acquainted with the requirements of Respondent's job, and did not have any training on reasonable accommodations that might be made for an employee who failed the test. This might suggest that when Appellant singled out Respondent to take the functional job screen test it was not out of legitimate safety concerns, but was a pretext to terminate Respondent because she was disabled. This inference was strengthened by testimony from Respondent's physician, a board-certified medical doctor, stating her medical opinion that Respondent was able to safely perform the tasks associated with her job. Evidence also showed Appellant was made aware of Dr. Ojascastro's medical opinion but disregarded it. This evidence further calls into question Appellant's reliance on the functional job screen's ability to accurately determine whether Respondent could perform the essential functions of her job.

Again, Appellant fails in its burden to show the evidence at trial supporting Respondent's claim that her disability was a contributing factor in her termination was so insubstantial as to warrant judgment notwithstanding the jury's verdict.

Appellant's Point II is denied.

## Point III

In its final point, Appellant wishes this Court to apply the doctrine of judicial estoppel to overturn the jury's verdict. Appellant argues judicial estoppel is appropriate because Respondent

11

made claims on her SSD application that are inconsistent with her MHRA claim against Appellant. For the reasons discussed below, we decline to follow Appellant's suggestion.

Judicial estoppel is an equitable doctrine available to courts to prevent litigants from playing "fast and loose" with the judicial system by making inconsistent claims in separate proceedings, which change in order to gain an unfair advantage based on the exigencies of the circumstances. The Missouri Supreme Court recently discussed the doctrine in Vacca v. Mo. Dep't of Labor and Indus. Relations, 575 S.W.3d 223 (Mo. banc 2019). Vacca involved an administrative law judge (ALJ) who filed a claim against his employer alleging retaliation for a disability claim, while simultaneously asserting in a marriage dissolution action he was unable to work, a claim fundamentally at odds with his disability claim.

Guided by case law from the U.S. Supreme Court, our Supreme Court held judicial estoppel to be an equitable doctrine of a "discretionary nature," which may be invoked under an array of circumstances which "'are probably not reducible to any general formulation or principle.'" Id. at 233, quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001). As such, the doctrine is not composed of any fixed set of elements, save but one: the party against which the doctrine is applied must have taken truly inconsistent positions in different legal proceedings. Vacca, 575 S.W.3d at 235. Aside from this inflexible prerequisite, other factors considered by courts include whether such a party successfully convinced the court in an earlier proceeding to accept the inconsistent position, and whether the offending party would gain an unfair advantage without application of the doctrine. Id. at 232-33, citing New Hampshire, 532 U.S. at 749.

Several points from Vacca are important to guide our analysis of Appellant's claim. First, as Respondent points out, in Vacca the Supreme Court reviewed the circuit court's denial of the employer's claim of judicial estoppel, finding the doctrine applied to reverse the lower

12

court's judgment. This is distinguishable from the instant case, where Appellant never asked the trial court to apply judicial estoppel. Respondent thus claims the issue is not preserved for review, and should be deemed waived. Appellant counters by pointing this Court's attention to a footnote in Vacca, where the Court quotes with approval a federal Seventh Circuit case, suggesting that because judicial estoppel is an equitable doctrine designed to protect the dignity of the courts, not the rights of a particular litigant, the doctrine may be raised and applied *sua sponte* by any court, including appellate courts. 575 S.W.3d at 229, n.4, quoting In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990). Respondent points out this footnote is dictum, as preservation of the claim was not at issue in Vacca.

Respondent's argument is well-taken. Regardless of whether this Court has tacitly received the approval of the Missouri Supreme Court to review claims for judicial estoppel not raised before lower courts, we must be mindful of the practical considerations which weigh against doing so. Our Court is a court of error, not a court of fact-finding. To take up such claims *sua sponte* for the first time on appeal would risk ruling on such claims with an incomplete picture of the relevant facts.

We note, however, this record is not completely bereft of relevant facts. While Appellant did not invoke judicial estoppel before the trial court, the facts concerning alleged inconsistencies between Respondent's SSD application and her disability claim were developed at trial. Appellant attempted to impeach Respondent with her SSD application, introducing it as evidence that was inconsistent with her testimony at trial and the factual assertions of her disability claim. Respondent had a full opportunity and motivation to litigate the underlying facts, explain any inconsistencies, and rehabilitate her credibility; indeed, she seems to have done so successfully, as the jury was unconvinced by Appellant's attempts to defeat her claim using

13

the SSD application. Thus, if we were to consider judicial estoppel as Appellant urges, we would not do so with a record devoid of relevant facts. Where, as here, the record contains well-developed facts regarding issues closely related to the judicial estoppel claim, the risk of evaluating such a claim on an insufficient record is greatly diminished. See Allen v. Zurich Ins. Co., 667 F.2d 1162, 1168 n.5 (4th Cir. 1982) (judicial estoppel is basis for affirming trial court granting JNOV on other related grounds).

Although Appellant failed to raise the issue of judicial estoppel before the trial court, the record contains sufficient facts to permit our review. Thus, we exercise our discretion to consider the issue for plain error. Rule 84.13(c). Reversal on plain error in a civil case is a high bar. "Reversal for plain error in civil cases is only appropriate in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." Ampleman v. Dish Network Serv., LLC, 467 S.W.3d 845, 849 (Mo. App. S.D. 2015).

The high bar of establishing plain error is made higher still by the fact that judicial estoppel, if applicable, is not a right to which Appellant is entitled under law. This is because judicial estoppel is a discretionary, equitable doctrine with a "broad purpose to protect the dignity of the courts *rather than the rights of the parties*...." Vacca, 575 S.W.3d at 231 (emphasis added). Whether Respondent's alleged abuse of the legal system resulted in some unfairness to Appellant is but one of the factors considered when deciding whether the doctrine is applicable. Id. at 237. After careful review of the record, we do not find present the factors that would lead us to conclude allowing Respondent to succeed on her claim would offend the dignity of the judicial system.

14

Most importantly, Appellant cannot demonstrate on this record Respondent's positions are truly inconsistent. As Vacca points out, claims for SSD and disability discrimination claims "can comfortably exist side by side." Id. at 235, quoting Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999). This is because the statutory language defining both claims does not overlap perfectly; therefore, we cannot presume that an application for SSD benefits must inherently conflict with a claim of disability discrimination under the MHRA because "disability" means different things in different contexts. Cleveland, 526 U.S. at 802-03. For instance, the SSD claim does not take into account whether the individual could continue working with "reasonable accommodation." Id. at 802. Thus, we must look to specific factual claims made by Respondent, and determine whether Respondent has "proffer[ed] a sufficient explanation" for any alleged discrepancy. Vacca, 575 S.W.3d at 235, quoting Cleveland, 526 U.S. at 806.

Appellant alleges Respondent's claims are inconsistent because her SSD application claimed she became unable to work on March 27, 2014, when she took leave before returning, taking the functional job screen, and being placed on leave. Appellant argues these are inconsistent claims because the SSD application states she could not work, and the MHRA claim requires she be able to work, with or without reasonable accommodation.

As an explanation for any alleged discrepancy between these claims, Respondent offers the following: Respondent had been treated for her arthritis and degenerative spinal disease via physical therapy and cortisone injections. The injections in particular provided substantial symptom relief, which allowed her to perform her tasks as a housekeeper. Respondent explains that when she took a leave of absence March 27, 2014, she did receive a cortisone injection. However, symptom relief was not immediate, and so she still suffered some pain as of the time

15

she returned to work. Nevertheless, she was able to clean by bending at the waist with a straight back. Then, when she returned and was placed on leave, she lost her insurance coverage and her income, and was thus unable to afford further injections. Had she not lost her insurance and income, she would have been receiving injections that would have allowed her to continue working. Because she was unable to continue receiving the injections, she stated truthfully on the SSD application she was unable to work, and needed assistance. Respondent asserts both claims are true because the severity of her impairment worsened when her access to medical treatment became restricted by the loss of her job. Respondent also states she put March 27, 2014 on her SSD application because that is the date Appellant instructed her to put on her leave of absence form after she failed the functional job screen test.

Even if we were to conclude the factual averments in Respondent's SSD application meant her pain was interfering with her ability to perform her job, this alone would not suffice to defeat Respondent's claim. As stated above, there are numerous situations where an SSD application and an MHRA claim can exist comfortably side-by-side. That the SSD application does not consider whether the employer may have offered a reasonable accommodation is particularly relevant here. Cleveland, 526 U.S. at 803. "[U]nder the Missouri statute, the employer has an affirmative duty to reasonably accommodate an employee's [disability] but the burden is on the employee to establish that with reasonable accommodation [s]he could perform the job." City of Clayton v. Mo. Com'n on Human Rights, 821 S.W.2d 521, 529 (Mo. App. E.D. 1991). "An employer must make reasonable accommodations to the known limitations of a [disabled] employee or applicant, including making the facilities accessible and usable and job restructuring or part-time or modified work schedules." Medley v. Valentine Radford Comm., Inc., 173 S.W.3d 315, 320 (Mo. App. W.D. 2005). In the instant case, evidence at trial showed

16

Appellant offered no reasonable accommodation to Respondent before terminating her. Respondent also argued to the jury they may find Appellant failed to reasonably accommodate Respondent by either offering her a grabbing tool to reach the floor or by allowing her to clean by bending at the waist instead of squatting.

We find this argument to be persuasive. To the extent Appellant believed squatting was essential to housekeeping, it would have been reasonable for them to accommodate Respondent's known limitation on her ability to squat by allowing her to clean by bending at the waist. The evidence of this accommodation's reasonableness largely overlaps the evidence which shows squatting may not have been an essential function of the job at all: that a medical doctor stated it was safe for Respondent to clean by bending at her waist, and that Respondent had previously been adequately cleaning Appellant's facilities without squatting. The fact that Respondent stated March 27, 2014, as the time she became unable to work was based at least in part on Appellant's own representations to Respondent, after it demanded that she squat to perform her job, and refused to accommodate her by allowing her to bend at the waist. Thus, it is accurate to say that it was as of that date Respondent became unable to work, because Appellant would not allow her to work.

In conclusion, we find Respondent's explanations regarding the alleged discrepancies between her MHRA claim and SSD application to be adequate, such that we do not feel the need to estop Respondent's claim on appeal. The factual reconciliation is supported by the record, which means that the one firm condition precedent for the application of judicial estoppel, that Respondent's positions be truly and irreconcilably inconsistent, is not present here. Further, we note a number of the aggravating factors the Vacca Court considered also are not present here. For example, the Supreme Court found it particularly vexing the plaintiff had taken inconsistent

17

positions on his disability, which shifted with the exigencies of his legal circumstances, because of his level of sophistication with the field of disability law as an ALJ judge. Vacca, 575 S.W.3d at 238. This contrasts to the instant case, where Respondent's lack of intimate knowledge with the field of disability law is shown not only by her lack of background in it, but by the fact she employed a third-party company to aid her in completing her SSD application. Further, the Vacca Court noted that plaintiff could not and did not reconcile his inconsistent claims by explaining his termination had a causal effect on his disability. Id. at 237. This is another striking distinction from the instant case, as this is precisely what Respondent asserts - that it was by virtue of losing her job, her income, and her insurance that she was unable to obtain necessary medical treatment and became unable to work.

Finally, we also note application of judicial estoppel in the instant case would not necessarily defeat Respondent's claim. Judicial estoppel does not automatically bar the entire claim; rather, it only estops the plaintiff from making the particular factual assertion which is inconsistent with her earlier claim. Id. at 238. Here, this would mean Respondent was estopped from claiming her disability did not interfere with her ability to do her job, because her SSD application said she was unable to work because of her disability. However, as discussed above, the SSD application does not take into account whether a reasonable accommodation would have enabled Respondent to continue working. Thus, Respondent would still have been free to argue her MHRA claim on the basis of Appellant's failure to offer her reasonable accommodation.

Because we do not find any of the factors present that would warrant application of judicial estoppel to vindicate this Court's dignity, we decline Appellant's suggestion it should apply. Nor did the trial court plainly err by not applying it. Point III is denied.

<u>Motion for Attorney's Fees</u>

Respondent has filed a motion for attorney's fees on appeal. An award of attorney's fees for the prevailing party is authorized under Section 213.111.2.

Appellant has filed a response in opposition to Respondent's motion for attorney's fees, arguing that Respondent's request of $187,725 is excessive. Appellant also requests this Court remand the matter to the trial court for a determination of appropriate attorney's fees.

"While appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." <u>Berry v. Volkswagen Grp. Of Am., Inc.</u>, 397 S.W.3d 425, 433 (Mo. banc 2013) (citation and internal quotation marks omitted). Here, Appellant takes numerous exceptions to the reasonableness of both the hourly rates and matters billed by Respondent's attorneys. We believe the trial court has more familiarity with the parties and the issues presented, as it has already considered and reduced Respondent's substantial attorney's fees request for prevailing at trial. Therefore, we remand this case to the trial court to determine reasonable attorney's fees to award Respondent as the prevailing party.

<u>Conclusion</u>

The judgment of the trial court is affirmed. The case is remanded to the trial court for determination of reasonable attorney's fees to be awarded to Respondent as the prevailing party.

_____
SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.

19