

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

COMO PREMIUM CONSTRUCTION )
LLC, D/B/A COMO PREMIUM, )
                              )
            Respondent, )
                              )
v.                               )         WD87585
                              )
ERIN L. PULSTER,           )         Opinion filed:  October 7, 2025
                              )
            Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**
**HONORABLE KIMBERLY SHAW, JUDGE**

Division Two:  Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Erin Pulster ("Pulster") appeals the judgment of the Circuit Court of Boone County ("trial court"), entered after a bench trial, finding in favor of CoMo Premium Construction LLC ("CoMo Premium") on its claim for breach of contract. Pulster asserts the trial court lacked authority to enter its judgment because the parties had agreed to settle all disputes through arbitration. Pulster contends that arbitration was "mandatory under the Federal Arbitration Act so long as [she] did not knowingly waive arbitration, which she in fact did not." However, we find that Pulster did waive any right to have this dispute resolved through arbitration. Accordingly, we find the trial court did not err by entering judgment,

and the judgment is affirmed. We remand this matter to the trial court to determine the amount of post-judgment attorney's fees CoMo Premium is entitled to recover and to enter an award accordingly.

**Factual and Procedural Background**

On June 30, 2022, Pulster and CoMo Premium—a Missouri limited liability company—entered into a contract wherein they agreed that CoMo Premium would remodel the outdoor deck of Pulster's residence in Columbia, Missouri for the price of $22,242.90. The contract contained provisions relating to interest, attorney's fees, and arbitration:

> 1) All payment and checks should be made payable to CoMo Premium Exteriors. Any sums not paid when due shall bear interest at the rate of 9% per annum until paid.
>
> . . .
>
> 4) . . . If collection of the amounts due Contractor [(CoMo Premium)] hereunder is placed in the hands of an attorney for collection, all attorney and legal fees incurred by Contractor in enforcing this Contract and collection of the sums due hereunder will be paid by Owner [(Pulster)].
>
> 5) The "Contractor" and the "Owner" agree to settle all disputes through the American Arbitration Association and **Owner waives any right to have any suit between the parties arising out of this Contract tried by a jury.**

(emphasis in contract).

On February 13, 2024, CoMo Premium initiated this action in the associate circuit division of the trial court, asserting Pulster had failed to pay CoMo Premium for all labor and materials furnished. CoMo Premium's petition asserted one count of breach of contract, and, in the alternative, counts of quantum meruit and unjust enrichment.

2

Pulster was served on April 12th. On May 17th, the trial court held a hearing; Pulster appeared *pro se*. A bench trial was held on June 21st. Pulster again appeared *pro se*. Both parties presented evidence.[1] On June 24th, the trial court entered judgment in favor of CoMo Premium as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED, that on Plaintiff's Petition, this Court finds in favor of Plaintiff on the basis that Defendant breached the parties' Contract by failing to pay Defendant for the work and materials furnished pursuant to the Contract.

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that a judgment be and the same is hereby entered against Defendant Erin L. Pulster and in favor of Plaintiff COMO Premium Construction LLC for damages in the amount of $18,098.14, which includes $12,273.16 for the work and material furnished pursuant to the Contract, $1,149.98 in interest, and attorney's fees in the amount of $4,675.00; and for interest on the whole of said judgment at the legal rate from and after the date of judgment.

Thirty days later, Pulster—through counsel—filed a motion to set aside the judgment, asserting, as relevant to this appeal, that the trial court should have dismissed this action because the parties had agreed in their contract to settle all disputes through arbitration. Pulster claimed that the Federal Arbitration Act ("FAA") applied, and the FAA "made arbitration mandatory such that [the trial court] was not authorized to hear this matter or to enter judgment."[2] As the basis for her claim that the FAA applied, she

---

[1] This Court was not provided a trial transcript, however the trial court's docket sheet states that both parties presented evidence at trial.

[2] The FAA "governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015). "The Missouri Uniform Arbitration Act (MUAA), § 435.350 *et seq.*, governs those Missouri arbitration matters not preempted by the FAA." *Id.* (footnote omitted). Although the FAA and MUAA are substantially similar, the MUAA contains a requirement relating to notice that is not found in the FAA: In order for an arbitration agreement to be enforceable under Missouri law, the contract must contain the following language in ten-point capital letters, "THIS CONTRACT

3

contended that "in forming the contract which contains the arbitration provision, the parties communicated by electronic mail which travelled within interstate commerce via 'Hotmail.com,' an electronic-mail service associated with 'Outlook.com' and which is a product of Microsoft Corporation, of Redmond, Washington."

CoMo Premium filed a response in opposition to the motion, and Pulster filed a reply. Attached to her reply was an affidavit in which she averred that, although she read the paragraph in the contract relating to arbitration, she "didn't understand what arbitration was and assumed the term was a synonym of 'trial' since that paragraph seemed to allow for a trial so long as it wouldn't be a jury trial."

The trial court held a hearing on Pulster's motion to set aside the judgment, and thereafter denied the motion.

Pulster appeals.

**Standard of Review**

"The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies

CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." § 435.460, RSMo; *see also Wind v. McClure*, 643 S.W.3d 691, 695 (Mo. App. E.D. 2022) ("failure to include the notice language required by § 435.460 renders the arbitration agreement unenforceable"). The contract at issue here between Pulster and CoMo Premium contains no such language; therefore, if the MUAA were to apply, the arbitration agreement would be unenforceable. However, if the FAA were to govern because the contract involved interstate commerce, section 435.460's notice requirement would not apply to render the arbitration agreement unenforceable. *See McCann Concrete Prods., Inc. v. Raineri Constr., LLC*, 685 S.W.3d 50, 53 (Mo. App. E.D. 2024) ("[T]he FAA preempts Section 435.460's notice requirement."); *see also Woermann Constr. Co. v. Sw. Bell Tel. Co.*, 846 S.W.2d 790, 792 (Mo. App. E.D. 1993) (arbitration provision in contract was invalid under Missouri law because it did not contain the notice required by section 435.460, but was valid under federal law).

the law." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015). Contract interpretation is a question of law, which we review *de novo*. *Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 321 (Mo. App. E.D. 2022). "We also review *de novo* whether the right to insist on arbitration, if present, has been waived." *Fogelsong v. Joe Machens Auto. Grp., Inc.*, 564 S.W.3d 393, 396 (Mo. App. W.D. 2018). "Whether a party has waived its right to arbitration is determined on a case-by-case basis." *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 557 (Mo. App. W.D. 2017).

**Analysis**

Pulster raises one point on appeal. Before we reach the merits of her point, however, we must determine whether we have authority to hear this appeal. Only if the trial court's judgment was "final" do we have such authority. *See Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) ("Other than statutorily recognized exceptions not applicable to the present case, section 512.020 requires that there be a 'final judgment' as a prerequisite to appellate review."); *see also Mintner v. Mintner*, 530 S.W.3d 534, 538 (Mo. App. W.D. 2017) ("the judgment that is being appealed must be a final judgment; if it is not, then we lack authority and must dismiss the appeal"). "Generally, a final judgment is defined as one that resolves all issues in a case, leaving nothing for future determination." *Buemi*, 359 S.W.3d at 20 (internal marks omitted).

CoMo Premium alleged three claims against Pulster in its petition: breach of contract (Count I), and, alternatively, quantum meruit (Count II) and unjust enrichment (Count III). In its judgment, the trial court found in favor of CoMo Premium on its claim for breach of contract and awarded CoMo Premium damages, interest, and attorney's fees.

5

However, the judgment was silent as to Counts II and III. The question thus arises: Did the trial court's judgment resolve all issues in the case such that it was a final judgment? We find that it did.

Under the doctrine of "implicit finality," "[i]f a judgment, by implication, necessarily carries with it a finding upon other counts, the judgment will be sustained as final even though the count is not specifically mentioned." *Jefferson v. Am. Fin. Grp., Inc.*, 163 S.W.3d 485, 487 n.2 (Mo. App. E.D. 2005); *see also First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 577 (Mo. App. E.D. 2013) ("The doctrine of implicit finality is a corollary to the general rule of finality which allows characterization of a judgment as final where the decision on one claim implicitly disposes of the other claims." (internal marks omitted)).

Here, CoMo Premium alleged three claims that were all based on one harm: Pulster's failure to pay CoMo Premium for all materials and labor furnished to complete the work on her deck. Count I alleged that Pulster breached the contract wherein the parties agreed she would pay CoMo Premium for the materials and labor furnished. Counts II and III were based on theories that, if no contract existed, it would nonetheless be inequitable for Pulster to retain the benefit of CoMo Premium's materials and labor without payment.[3]

---

[3] Claims of quantum meruit and unjust enrichment seek recovery where there was no actual contract; they are instead based on the existence of a contract implied in law. "[A] contract implied in law is not actually a contract and, instead, is an obligation to do justice where no promise was ever made or intended." *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 828-29 (Mo. banc 2012). "Courts sometimes use the term 'quasi-contract' to refer to this phenomenon." *Id.* at 829. Both quantum-meruit and unjust-enrichment claims require that a benefit be conferred and inequitably retained. *Holliday Invs., Inc. v. Hawthorn Bank*, 476 S.W.3d 291, 295 (Mo. App. W.D. 2015). "For a quasi-contract based upon quantum meruit, recovery is based upon the reasonable value of the goods or services furnished to the defendant." *Id.* at 296. "For a quasi-

By finding in favor of CoMo Premium on its claim for breach of contract, the trial court implicitly denied the other two claims: A finding that Pulster breached the contract necessarily means the trial court found a contract existed, which is antithetical to the quantum-meruit and unjust-enrichment claims that were pled in the alternative.

Moreover, as explained above, the quantum-meruit and unjust-enrichment claims were based on the same harm as the breach-of-contract claim. "A plaintiff is only entitled to be made whole once," and thus cannot recover "more than one full recovery for the same harm." *Twehous Excavating, Inc. v. Jefferson City Ret., LLC*, 613 S.W.3d 499, 504 (Mo. App. W.D. 2020). Accordingly, CoMo Premium could not recover both for breach of contract and quantum meruit or unjust enrichment. For this reason, too, the trial court's judgment finding in favor of CoMo Premium on Count I necessarily disposed of Counts II and III, even though these counts were not expressly ruled upon.

In sum, we find the judgment resolved all issues in the case, leaving nothing for future determination, and thus was a final judgment. We therefore have authority to address the merits of this appeal, which we turn to next.

Pulster asserts the "trial court erred in entering judgment because the court was without authority to do so," in that "the parties had agreed to settle 'all disputes' by way of arbitration rather than litigation." Pulster contends the FAA "applied to mandate arbitration," and that the FAA applied because the contract was formed "within interstate commerce," asserting the parties "reached the agreement" "by electronic mail which

---

contract based upon unjust enrichment, recovery is not the actual amount of the enrichment, but the amount of enrichment which would be unjust for the defendant to retain." *Id.*

7

travelled within interstate commerce via 'Hotmail.com,' a service hosted in the state of Washington." Pulster does not cite any case—and CoMo Premium contends no case exists—in which a court has held that the use of email between citizens of one state performing a contract in that state was, by itself, a sufficient nexus to interstate commerce to invoke the FAA. However, we need not determine whether the FAA applies in this case, because assuming *arguendo* that the arbitration agreement in the parties' contract was valid and enforceable, Pulster waived any right to arbitrate this dispute.[4]

A party waives her right to arbitrate if she "had knowledge of the right to arbitrate" and "acts inconsistently with that right[.]" *Lopez*, 656 S.W.3d at 327; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (In determining whether the party waived its right to arbitration, the inquiry to be applied was: Did the party "knowingly relinquish the right to arbitrate by acting inconsistently with that right?"). "Waiver results from a party's

---

[4] We also note that the record provides no support for Pulster's claim that this contract was formed "within interstate commerce." The record before us includes the parties' contract and invoices (which were attached to CoMo Premium's petition) and Pulster's affidavit (which was attached to her reply suggestions in support of her motion to set aside the judgment). These documents do not describe how the contract was formed, nor do they indicate that email exchanges occurred between the parties or that a "Hotmail" email address was used. There is also no support in the record for Pulster's claim that "Hotmail.com" is a "service hosted in the state of Washington." Rather, these were all simply contentions made by counsel in Pulster's motion to set aside the judgment and in her briefing on appeal, and thus provide no evidentiary basis for a finding that the contract was formed "within interstate commerce." *See Wilson v. Wilson*, 667 S.W.3d 181, 186-87 (Mo. App. W.D. 2023) ("Allegations in a motion are not self-proving," therefore counsel's allegation that the defendant lived in Missouri—which was not supported by a sworn affidavit or testimony—provided no support for counsel's argument that the court had personal jurisdiction over the defendant); *Andersen v. Osmon*, 217 S.W.3d 375, 381 (Mo. App. W.D. 2007) ("Bare assertions by counsel do not prove themselves," and "[a]rguments and statements of counsel are not evidence of the facts presented.").

substantial participation in litigation to a point inconsistent with an intent to arbitrate." *Lopez*, 656 S.W.3d at 327.

Pulster acted inconsistently with any right to arbitrate by participating in a trial on the merits and waiting until thirty days after entry of judgment to seek arbitration. *Cf. Housley v. Autohaus, L.L.C.*, 711 S.W.3d 554, 558 (Mo. App. S.D. 2025) ("Appellants acted inconsistently with their right to arbitrate by substantially participating in the underlying litigation": Appellants filed motions, responded to discovery requests, and agreed to a jury trial setting). While we are mindful that this case was filed in associate circuit court and proceeded to trial without motion or discovery practice, we nonetheless find that by presenting evidence at trial, Pulster acted inconsistently with her later-claimed right to arbitrate. Indeed, vacating the judgment after a trial on the merits and ordering the case be re-tried before an arbitrator would frustrate—not further—the purposes of both arbitration and the waiver doctrine. *See GFS, II, LLC v. Carson*, 684 S.W.3d 170, 187 (Mo. App. W.D. 2023) ("The function of arbitration is to be a speedy, efficient and less expensive alternative to court litigation."); *Pinkerton v. Tech. Educ. Servs., Inc.*, 616 S.W.3d 477, 490 (Mo. App. W.D. 2020) ("the primary purpose of arbitration [is] to efficiently reach a final and binding decision"); *Lopez*, 656 S.W.3d at 327-28 ("a key consideration under the waiver doctrine is to avoid requiring the parties to litigate the same underlying facts before two separate tribunals, which has been held to be antagonistic to judicial economy, the purposes of arbitration, and common sense" (internal marks omitted)). Pulster's failure to assert a right to arbitration until after trial and entry of

9

judgment on the merits "is the antithesis of seeking a streamlined, expeditious arbitral resolution." *Carson*, 684 S.W.3d at 187.

Finally, we are not persuaded by Pulster's argument that she did not *knowingly* waive her right to arbitration in that "she thought 'arbitration' was just another word for 'trial.'" "Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing." *Bertocci*, 530 S.W.3d at 553; *see also Farmland Indus., Inc. v. Bittner*, 920 S.W.2d 581, 584 (Mo. App. W.D. 1996) ("Absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs."). Here, Pulster admits that she read the contract, and she has not made any allegations of fraud. Thus, she is charged with knowledge of what she signed, and she is deemed to have understood the meaning of the word "arbitration."

For these reasons, we find the trial court had authority to enter judgment in this matter and the trial court did not err in doing so. Point denied.[5]

---

[5] CoMo Premium has filed a Motion for Attorneys' Fees on Appeal pursuant to Western District Special Rule 29, requesting this Court (1) order Pulster pay the attorney's fees CoMo Premium incurred post-judgment, including the attorney's fees incurred on appeal, and (2) remand the matter to the trial court "for the limited purpose of determining what amount of additional attorneys' fees" CoMo Premium is entitled to recover.

"If a contract provides for the payment of attorney fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Ely v. Alter*, 561 S.W.3d 1, 11 (Mo. App. W.D. 2018). "The entitlement to attorneys' fees on appeal stands upon the same ground as that at the trial court level." *Dumler v. Nationstar Mortg., LLC*, 585 S.W.3d 343, 354 (Mo. App. W.D. 2019). In accordance with the contract between the parties, we find CoMo Premium is entitled to the attorney's fees it incurred post-judgment, to include attorney's fees on appeal. We therefore grant CoMo Premium's Motion for Attorneys' Fees on Appeal and remand this matter to the trial court to determine the proper amount of fees and order CoMo Premium be awarded

10

**Conclusion**

The judgment of the trial court is affirmed. We remand this matter to the trial court to determine the amount of post-judgment attorney's fees—to include attorney's fees on appeal—CoMo Premium is entitled to recover and to enter an award accordingly.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

accordingly. *See Mignone v. Mo. Dep't of Corr.*, 546 S.W.3d 23, 45-46 (Mo. App. W.D. 2018) ("Although appellate courts have authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested.").